114 T.C. No. 7


UNITED STATES TAX COURT


RICHARD K. AND MARILYN J. PHILLIPS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9354-96.                    Filed February 29, 2000.


        Ps were limited partners in several partnerships
with the same designated tax matters partner (TMP).  At
the request of the Internal Revenue Service (IRS), the
TMP executed Forms 872, Consent to Extend the Time to
Assess Tax, extending the periods of limitations for
the years in issue.
        Before executing the extensions, the TMP had been
the subject of criminal tax investigations by the IRS.
The tax investigations ended before the TMP executed
most of the extensions.
        Ps alternatively contend:  (1) That the second and
third sentences of sec. 301.6231(c)-5T, Temporary
Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5,
1987), are invalid and that the initiation of a
criminal tax investigation of the TMP converted his
partnership items into nonpartnership items as a matter
of law; (2) that the criminal tax investigation of the
TMP created a conflict of interest between the TMP's
duties as a fiduciary of the partnerships and his self-
interest as the subject of a criminal tax investigation
and that such a conflict necessitated his removal as
TMP based on the rationale of <u>Transpac Drilling Venture</u>

1982-12 v. Commissioner, 147 F.3d 221 (2d Cir. 1998), revg. and remanding Transpac Drilling Venture 1982-16 v. Commissioner, T.C. Memo. 1994-26; or (3) that respondent abused his discretion by not issuing a written notice informing the TMP that his partnership items would be treated as nonpartnership items.

Held: Sec. 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, is a valid regulation. Held, further: The criminal tax investigation did not create a disabling conflict of interest and therefore did not terminate the TMP's designation. Held, further: Ps have not established that respondent abused his discretion by not notifying the TMP that his partnership items would be treated as nonpartnership items.

Curtis W. Berner, for petitioners.

Margaret A. Martin, Neal O. Abreu, Steven Mopsick, and Ronald L. Buch, Jr., for respondent.

## OPINION

DAWSON, Judge: This case was assigned to Special Trial Judge Stanley J. Goldberg pursuant to Rules 180, 181, and 183. All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes, additions to taxes, and penalties for the taxable years and in the amounts set forth below:

| Year | Deficiency | Additions to Tax | | | | | Additional Interest |
|------|-----------|-----------------|-----------------|--------------------|-----------------|-----------------|---------------------|
| | | Sec. 6651(a) | Sec. 6653(a) | Sec. 6653(a)(1)(B) | Sec. 6659 | Sec. 6661 | Sec. 6621(c) |
| 1980 | $3,917 | -- | -- | -- | -- | -- | [1] |
| 1981 | 17 | -- | -- | -- | -- | -- | -- |
| 1982 | 1,248 | -- | -- | -- | -- | -- | [1] |
| 1983 | 11,334 | $1,043 | -- | -- | -- | -- | [1] |
| 1984 | 1,196 | -- | -- | -- | -- | -- | [1] |
| 1985 | 4,662 | -- | -- | -- | -- | -- | [1] |
| 1986 | 8,068 | 139 | -- | -- | -- | -- | [1] |
| 1987 | 54,708 | 7,402 | $2,760 | [2] | $16,412 | $13,677 | [1] |
| 1988 | 52,048 | 8,981 | 2,670 | – | 15,614 | 13,012 | [1] |

| Year | Deficiency | Sec. 6651(a) | Penalties | | | |
|------|-----------|--------------|-----------------|-----------------|-----------------|-----------------|
| | | | Sec. 6662(h) | Sec. 6662(e) | Sec. 6662(d) | Sec. 6662(c) |
| 1989 | $43,986 | $4,008 | $17,594 | $8,797 | $8,797 | $8,797 |
| 1990 | 25,515 | 4,697 | 6,593 | 3,296 | 5,103 | 5,103 |
| 1991 | 41,240 | 7,435 | 16,238 | 8,119 | 8,248 | 8,248 |
| 1992 | 222,282 | 10,792 | 88,913 | 44,456 | 44,456 | 44,456 |

[1]    Respondent determined that interest is to be computed at 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

[2]    Respondent determined that an additional amount is to be computed equal to 50 percent of the interest attributable to the entire 1987 underpayment pursuant to sec. 6653(a)(1)(B).

After concessions, the sole issue to be decided is whether the periods of limitations for the years in issue expired before the issuance of the final partnership administrative adjustments (FPAA's).  The resolution of this issue depends upon whether Walter J. Hoyt III, as tax matters partner for the partnerships involved herein, validly executed various Forms 872, Consent to Extend the Time to Assess Tax.

This case was submitted fully stipulated pursuant to Rule 122.  The stipulations of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners lived in Shell Beach, California.

In 1983, petitioners became limited partners in the Shorthorn Genetic Engineering 1983-2 partnership (SGE 83-2) and claimed losses and investment tax carrybacks to the 1980, 1981,

and 1982 taxable years.  Petitioners subsequently became limited partners in both the Durham Shorthorn Breed Syndicate 1987-E partnership (DSBS 87-E) and the Timeshare Breeding Service Joint Venture partnership (TBS J.V.).  These three partnerships, hereinafter collectively referred to as the Hoyt partnerships, are TEFRA[1] partnerships subject to the provisions of sections 6221 through 6233 for all post-1982 taxable years in issue. Petitioners claimed losses from the Hoyt partnerships through 1992.

Walter J. Hoyt III (Mr. Hoyt) was designated the tax matters partner (TMP) on the Hoyt partnership returns for the years in issue, with the sole exception of SGE 83-2, which did not list a designated TMP on its partnership return for the 1983 tax year.[2]

As TMP, Mr. Hoyt executed extensions of the periods of limitations, extending the periods for assessment and collection for the Hoyt partnerships as set forth below:

---

[1]    Congress enacted the TEFRA partnership procedures as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648.

[2]    Though Mr. Hoyt was not designated TMP on SGE 83-2's 1983 return, he signed the 1983 tax return for SGE 83-2 as general partner.  Mr. Hoyt also executed an extension of the period of limitations for SGE 83-2's 1983 tax year on Sept. 26, 1986.

| Partnership | Year[1] | Form Signed | Date Signed | Date of Extension Expiration | Date FPAA Was Issued |
|---|---|---|---|---|---|
| SGE 83-2 | 1983 | 872-0 | 9/25/86 | Indefinite | 9/19/89 |
| SGE 83-2 | 1984 | 872-0 | 8/01/87 | Indefinite | 9/19/89 |
| SGE 83-2 | 1985 | None | – | -- | 9/19/89 |
| SGE 83-2 | 1986 | None | – | -- | 6/25/90 |
| SGE 83-2 | 1987 | 872-P | 2/15/91 | 12/31/92 | -- |
|  |  | 872 | 4/06/91 | 12/31/92 | – |
|  |  | 872 | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 3/06/93 | 12/31/93 | 11/22/93 |
| SGE 83-2 | 1988 | 872-P | 2/14/91 | 12/31/92 | – |
|  |  | 872 | 4/06/91 | 12/31/92 | – |
|  |  | 872 | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 3/06/93 | 12/31/93 | 11/22/93 |
| SGE 83-2 | 1989 | 872 | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 3/06/93 | 12/31/93 | 11/22/93 |
| SGE 83-2 | 1990 | None | – | – | 9/12/94 |
| SGE 83-2 | 1991 | None | – | – | 3/27/95 |
| SGE 83-2 | 1992 | None | – | – | 6/25/95 |
| DSBS 87-E | 1988 | 872-P | 2/14/91 | 12/31/92 | – |
|  |  | 872 | 4/06/91 | 12/31/92 | – |
|  |  | 872 | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 3/06/93 | 12/31/93 | 10/25/93 |
| DSBS 87-E | 1989 | 872 | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 7/25/92 | 06/30/93 | – |
|  |  | 872-P | 3/06/93 | 12/31/93 | 10/18/93 |
| DSBS 87-E | 1990 | None | – | – | 7/15/94 |
| DSBS 87-E | 1991 | None | – | – | 4/24/95 |
| TBS J.V. | 1987 | 872-P | 2/22/91 | 12/31/92 | -- |
|  |  | 872 | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 3/06/93 | 12/31/93 | 12/30/93 |
| TBS J.V. | 1988 | 872 | 4/06/91 | 12/31/92 | -- |
|  |  | 872 | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 3/06/93 | 12/31/93 | 12/30/93 |
| TBS J.V. | [2]1989 | 872 | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 7/25/92 | 06/30/93 | -- |
|  |  | 872-P | 3/06/93 | 12/31/93 | None[3] |
| TBS J.V. | [2]1990 | None | -- | -- | None[3] |
| TBS J.V. | [2]1991 | None | – | – | None[3] |
| TBS J.V. | [2]1992 | None | – | – | None[3] |

[1]    Before 1989, the correct taxable year for both SGE 83-2 and DSBS 87-E was the calendar year.  Beginning with the short taxable year ending Sept. 30, 1989, the correct taxable year for both SGE 83-2 and DSBS 87-E was the year ending Sept. 30, as the result of respondent's acceptance of Forms 1128, Application for Change in Accounting Period, filed for those partnerships.  The correct taxable year of TBS J.V. was the calendar year for all years in issue.

[2]    The parties do not agree as to whether a return was filed for this taxable year at any time through Sept. 23, 1998.

[3]    No FPAA had been issued as of Apr. 17, 1995, the date petitioners filed a petition in bankruptcy.

Pursuant to the stipulations of the parties,[3] the periods of limitations for the following years are still in issue: (1) The 1983, 1987, 1988, and 1989 taxable years for SGE 83-2; (2) the 1988 and 1989 taxable years for DSBS 87-E; and (3) the 1988, 1989, and 1990 taxable years for TBS J.V.

On April 23, 1984, the Examination Division of the Internal Revenue Service (Examination Division) requested that the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS) investigate Mr. Hoyt for allegedly preparing false and fraudulent individual income tax returns for 12 individuals.[4] Mr. Hoyt allegedly advised the 12 individuals that although they did not join certain Hoyt-managed partnerships until 1984, they could deduct partnership losses on their 1983 Federal income tax returns.

---

[3] The parties have stipulated that the periods of limitations for the assessment and collection of any deficiency in income tax due from petitioners with respect to: (1) Shorthorn Genetic Engineering 83-2 partnership for the 1984, 1985, and 1986 calendar years and for its fiscal years ending Sept. 30, 1990 and 1991; and (2) Durham Shorthorn Breed Syndicate 87-E partnership for the fiscal years ending Sept. 30, 1990 and 1991, have not expired.

Petitioners concede that the statute of limitations does not bar assessment and collection of any income tax deficiency from the Timeshare Breeding Service Joint Venture partnership for its 1991 calendar year or any partnership in this case whose taxable year ended with, or within, petitioners' 1992 calendar year. Partnership items of each of those partnerships for those years became nonpartnership items as of Apr. 17, 1995.

[4] None of the 12 individuals are petitioners in the present case.

CID assigned a special agent to the investigation on April 24, 1984, and by June 3, 1985, the agent had deposed over 60 partners of various Hoyt-managed partnerships.[5]

On April 21, 1986, CID recommended that Mr. Hoyt be prosecuted under section 7206(2) for aiding and assisting in the preparation of false and fraudulent individual income tax returns for 12 individuals and referred the matter to the Sacramento IRS District Counsel. On July 31, 1986, District Counsel referred the matter to the United States Department of Justice (Justice Department) for criminal prosecution. The Justice Department declined prosecution on August 12, 1987.[6]

In addition to the earlier referral, the Examination Division referred a criminal fraud case involving Mr. Hoyt to CID on July 28, 1989. The criminal fraud referral was unrelated to the earlier criminal tax investigation for which the Justice Department had already declined criminal prosecution. CID accepted the criminal fraud referral and began a fraud investigation of Mr. Hoyt on October 17, 1989.

On October 13, 1989, the U.S. Attorney's Office asked CID to join an ongoing grand jury investigation of Mr. Hoyt. CID joined

---

[5]    In turn, these partners apparently learned of the IRS criminal tax investigation of Mr. Hoyt because of the depositions requested by the special agent.

[6]    From the record, it is clear that the latest that Mr. Hoyt knew that the Justice Department had declined prosecution was on or about Nov. 6, 1987.

the grand jury investigation after receiving permission from the IRS Regional Commissioner.

CID finished working on both the criminal fraud referral and the grand jury investigation no later than October 1, 1990. The U.S. Attorney's Office ended the grand jury investigation of Mr. Hoyt on October 2, 1990, without an indictment. The record before us does not refer to subsequent criminal investigations of Mr. Hoyt.

On April 17, 1995, petitioners filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of California (bankruptcy court).[7] Petitioners' partnership items in the Hoyt partnerships were converted to nonpartnership items on that date.[8]

Respondent mailed notices of deficiency to petitioners on January 30, 1996. Respondent's determinations, set forth above, are based solely on petitioners' involvement in the Hoyt partnerships.

On April 29, 1996, the bankruptcy court entered an order granting petitioners' Motion for Relief from the Automatic Stay

---

[7] Petitioners' bankruptcy case, No. 95-23293-A-13, was still pending at the time the petition was filed.

[8] Sec. 301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), provides that the partnership items of a partner named as a debtor in a bankruptcy proceeding become nonpartnership items as of the date the bankruptcy petition is filed.

for the sole purpose of permitting them to file a petition with the Tax Court in this case.

1.  <u>General Discussion</u>

The TMP is the central figure of partnership proceedings, and, consequently, his status is of critical importance to the proper functioning of the partnership audit and litigation procedures.  He serves as the focal point for service of all notices, documents, and orders for the partnership in both administrative and judicial proceedings.  See <u>Computer Programs Lambda, Ltd. v. Commissioner</u>, 89 T.C. 198, 205-206 (1987).  As the result of his statutory responsibilities, the TMP acts as a fiduciary, and, as a fiduciary, his actions affect the rights of all partners in the partnership.  See <u>id.</u> at 205-206.

The TMP may extend the period of limitations with respect to all partners in a partnership by an agreement between the IRS and the TMP, or the period may be extended by an agreement between the IRS and any other person authorized by the partnership in writing.[9]  See sec. 6229(b)(1)(B).

---

[9]     The period of limitations for a specific partner may also be extended by an agreement between the IRS and that partner.  See sec. 6229(b)(1)(A).

A TMP is generally designated at the time the partnership return is filed.  See sec. 301.6231(a)(7)-1(c), Proced. & Admin. Regs.[10]

The designation of a TMP remains effective until the termination of the designation pursuant to section 301.6231(a)(7)-1(l)(1), Proced. & Admin. Regs.,[11] which provides in pertinent part:

> (l) Termination of designation--(1) In general.  A designation of a tax matters partner for a taxable year under this section shall remain in effect until–
>
> * * * * * * *
>
> (iv) The partnership items of the tax matters partner become nonpartnership items under section 6231(c)(relating to special enforcement areas); * * *

In turn, section 6231(c), relating to special enforcement areas, applies to criminal investigations and other areas that the Secretary determines by regulation to present special enforcement considerations.

---

[10] The temporary regulation, sec. 301.6231(a)(7)-1T(c), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987), contained the same provision.  Sec. 301.6231(a)(7)-1, Proced. & Admin. Regs. is the final regulation effective for all designations, selections, and terminations of a TMP occurring on or after Dec. 23, 1996.

[11] The temporary regulation, sec. 301.6231(a)(7)-1T(l)(4), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792 (Mar. 5, 1987), was identical.

Section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987),[12] was promulgated by the Secretary pursuant to section 6231(c)(2) and (3) and provides for the treatment of partnership items of a partner who is the subject of a criminal tax investigation as follows:

> The treatment of items as partnership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner to which the criminal investigation relates shall be treated as nonpartnership items as of the date on which the partner is notified that he or she is the subject of a criminal investigation and receives written notification from the Service that his or her partnership items shall be treated as nonpartnership items. The partnership items of a partner who is notified that he or she is the subject of a criminal investigation shall not be treated as nonpartnership items under this section unless and until such partner receives written notification from the Service of such treatment.

Generally, there is a 3-year period of limitations on the assessment of a tax attributable to any partnership item. And, generally, the issuance of an FPAA will suspend the period of limitations. See, e.g., sec. 6229(d).

---

[12]     These temporary regulations apply to partnership taxable years beginning after Sept. 3, 1982. See 52 Fed. Reg. 6779 (Mar. 5, 1987).

2. Petitioners' Position

Petitioners contend that Mr. Hoyt's extensions of the period of limitations are invalid because at the time he executed the appropriate Forms 872 he no longer was the TMP of the Hoyt partnerships because he had been the subject of a criminal tax investigation. Therefore, they contend that since the extension agreements were invalidly executed, the periods of limitations for the years in issue expired before the FPAA's were issued.

Petitioners base their contentions on three alternative arguments: (1) That the second and third sentences of section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, are invalid and that the initiation of a criminal tax investigation of Mr. Hoyt converted his partnership items in the Hoyt partnerships into nonpartnership items as a matter of law; (2) that the criminal tax investigation of Mr. Hoyt created a conflict of interest between Mr. Hoyt's duties as a fiduciary of the Hoyt partnerships and his self-interest as the subject of a criminal tax investigation and that such a conflict necessitated his removal as TMP on the basis of the rationale of Transpac Drilling Venture 1982-12 v. Commissioner, 147 F.3d 221 (2d Cir. 1998), revg. and remanding Transpac Drilling Venture 1982-16 v. Commissioner, T.C. Memo. 1994-26; or (3) that the Commissioner abused his discretion by not issuing a written notice informing

Mr. Hoyt that his partnership items would be treated as nonpartnership items.

## 3. Respondent's Position

Respondent contends that Mr. Hoyt was TMP at all times when he executed extensions of the periods of limitations for the Hoyt partnerships. Respondent contends that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, is a valid regulation and that, in accordance with the regulation, a taxpayer's partnership items are not treated as nonpartnership items until the Commissioner notifies the taxpayer that: (1) He is the subject of a criminal tax investigation; and (2) his partnership items will be treated as nonpartnership items. In addition, respondent contends that the facts of Transpac Drilling Venture 1982-12 v. Commissioner, supra, are distinguishable from the facts in this case and that the criminal tax investigation of Mr. Hoyt did not create a conflict of interest affecting Mr. Hoyt's duties as a fiduciary of the Hoyt partnerships.

## 4. Mr. Hoyt's Status as TMP for SGE 83-2's 1983 Taxable Year

As an initial matter, we must decide whether Mr. Hoyt was validly designated TMP of SGE 83-2 for the 1983 taxable year. Petitioners contend that Mr. Hoyt could not have served as SGE 83-2's TMP for 1983 because he was not a general partner of SGE 83-2 for that year and was not validly designated TMP on SGE 83-2's 1983 partnership return.

Section 6231(a)(7) defines a TMP as either: (1) A general partner designated TMP as provided in regulations; or (2) if no general partner has been so designated, the general partner having the largest profits interest in the partnership at the close of the tax year.

With the exception of SGE 83-2's 1983 partnership return, Mr. Hoyt was designated TMP on the returns for the Hoyt partnerships for all of their post-1982 taxable years pursuant to section 6231(a)(7)(A). See sec. 301.6231(a)(7)-1(c), Proced. & Admin. Regs. Though no partner was designated TMP on SGE 83-2's 1983 return, Mr. Hoyt signed SGE 83-2's 1983 tax return as a general partner.

It is clear from the record that Mr. Hoyt was the sole general partner of SGE 83-2 in 1983 and therefore was the general partner having the largest profits interest in the partnership at the close of the 1983 taxable year pursuant to section 6231(a)(7)(B). On the basis of the record, we find that Mr. Hoyt was TMP of SGE 83-2 for the 1983 taxable year pursuant to section 6231(a)(7)(B).

We will now examine each of petitioners' arguments in turn.

5. Validity of Section 301.6231(c)-5T, Temporary Proced. & Admin. Regs.

Petitioners contend that the second and third sentences of section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, are invalid and that the initiation of the criminal tax

investigation of Mr. Hoyt resulted in the conversion of his partnership items in the Hoyt partnerships into nonpartnership items as a matter of law. Therefore, Mr. Hoyt's TMP designation was terminated and any extensions he signed on behalf of the Hoyt partnerships were invalid.

Petitioners base their position on the interrelationship of section 6231(c), section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), and section 301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin. Regs.

Our understanding of petitioners' argument is as follows: (1) The Secretary may determine in situations enumerated in section 6231(c)(1) that "to treat items as partnership items will interfere with the effective and efficient enforcement of * * * [the internal revenue laws]", sec. 6231(c)(2) (emphasis added); (2) once such a determination is made by the Secretary, such partner's partnership items "shall be treated as nonpartnership items", id. (emphasis added); (3) by regulation, the Secretary has determined that "The treatment of items as partnership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws", sec. 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra (emphasis added); and (4)

therefore, at the initiation of a criminal tax investigation, the partner's items become nonpartnership items pursuant to section 6231(c)(2), and the partner is removed as TMP pursuant to section 301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin. Regs.

In sum, petitioners conclude that once a partner is removed as TMP upon the initiation of a criminal tax investigation, the partner so removed cannot serve as TMP as long as he remains the subject of a criminal tax investigation and that any previous designation of that partner as TMP will cease. Petitioners, however, concede that a partner subject to a criminal tax investigation could serve as TMP upon completion of that investigation but would probably have to be redesignated TMP.

On the basis of the above argument, petitioners argue that Mr. Hoyt could not have served as TMP after the initial criminal tax investigation which began on April 24, 1984.

In addressing petitioners' argument, we turn first to the interpretation of the language of section 6231(c).

When interpreting statutes, the function of courts is to construe the language of the statute to give effect to the intent of Congress. See Cramer v. Commissioner, 101 T.C. 225, 247 (1993), affd. 64 F.3d 1406 (9th Cir. 1995). Where possible, statutes should be interpreted in their ordinary everyday sense. See Crane v. Commissioner, 331 U.S. 1, 6 (1947). A statute is to

be construed so that each of its provisions is given full effect and not to render parts of the statute inoperative or superfluous. See <u>Duke v. University of Texas</u>, 663 F.2d 522, 526 (5th Cir. 1981).

Accordingly, section 6231(c) should be read in its entirety, as part of a single statutory scheme, and not so as to render parts of the statute inoperative. Section 6231(c), in pertinent part, provides as follows:

> SEC. 6231(c). Regulations With Respect to Certain Special Enforcement Areas.--
>
> (1) Applicability of Subsection.--This subsection applies in case of
>
>         * * * * * * *
>
> (B) criminal investigations,
>
>         * * * * * * *
>
> (E) other areas that the Secretary determines by regulation to present special enforcement considerations.
>
> (2) Items May Be Treated As Nonpartnership Items. --<u>To the extent that the Secretary determines and provides by regulations</u> that to treat items as partnership items will interfere with the effective and efficient enforcement of this title in any case described in paragraph (1), such items shall be treated as non-partnership items for purposes of this subchapter. [Emphasis added.]
>
> (3) Special Rules.--<u>The Secretary may prescribe by regulation such special rules as the Secretary determines to be necessary to achieve the purposes of this subchapter in any case described in paragraph (1)</u>. [Emphasis added.]

From the plain language of the statute, it is clear that the Secretary has authority to promulgate regulations in order to "achieve the purposes of this subchapter" in cases involving section 6231(c), concerning, among other areas, criminal investigations.

Section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, promulgated pursuant to the grant of authority in section 6231(c), is a legislative regulation because Congress explicitly left a gap for the agency to fill. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-844 (1984). A legislative regulation is given controlling weight unless the regulation is arbitrary, capricious, or manifestly contrary to the statute. See id.

In addition, courts are to interpret a regulation as a whole, in light of the overall statutory scheme, and not to give force to one phrase in isolation. See Norfolk Energy, Inc. v. Hodel, 898 F.2d 1435, 1442 (9th Cir. 1990). Courts have a duty to give effect to every part of a regulation and construe each part in connection with every other part so as to produce a harmonious whole. See Miami Heart Inst. v. Sullivan, 868 F.2d 410, 413 (11th Cir. 1989).

It is clear that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, concerning the treatment of partnership items of partners under criminal tax investigation, differs from

regulations promulgated to address other special enforcement areas.  For example, the Secretary did not explicitly require that a taxpayer receive written notification in every special enforcement situation.  Rather, each special enforcement regulation begins with language similar to the language of section 6231(c)(2):

> The treatment of items as partnership items with respect to a partner * * * [in a specifically described circumstance] will interfere with the effective and efficient enforcement of the internal revenue laws.

Sec. 301.6231(c)-6T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987) (providing that the partnership items of a partner whose taxable income is determined by use of an indirect method of proof shall be treated as nonpartnership items on the date of the mailing of the deficiency notice); see also sec. 301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987) (providing that the partnership items of a partner named as debtor in a bankruptcy proceeding become nonpartnership items as of the filing of the bankruptcy petition).

After this introductory language, each special enforcement regulation specifically sets forth what circumstances will interfere with the effective and efficient enforcement of the internal revenue laws and when partnership items in that situation will be treated as nonpartnership items.

For example, in the case of criminal tax investigations, partnership items would not be treated as nonpartnership items unless a partner:  (1) Was notified that he was the subject of a criminal tax investigation; and (2) received written notification that his partnership items would be treated as nonpartnership items.  See sec. 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).  Therefore, the timing of the treatment of a partner's partnership items as nonpartnership items is specified in each regulation.

Section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, consists of three sentences.  Petitioners dispute respondent's interpretation of the regulation and contend that the second and third sentences solely address:  (1) Which partnership items become nonpartnership items; and (2) when partnership items are converted to nonpartnership items. Petitioners also contend that the last two sentences of the regulation conflict with the first sentence and with the language of section 6231(c).  In sum, petitioners urge this Court to read the first sentence of section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, in isolation, divorced from the regulation as a whole.

Petitioners' interpretation of the interaction between section 6231(c) and section 301.6231(c)-5T, Temporary Proced. &

Admin. Regs., <u>supra</u>, would negate the two notification requirements listed in the regulation.

In <u>Transpac Drilling Venture 1982-16 v. Commissioner</u>, T.C. Memo. 1994-26, revd. <u>Transpac Drilling Venture 1982-12 v. Commissioner</u>, 147 F.3d 221 (2d Cir. 1998), this Court specifically noted that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., <u>supra</u>, requires that a taxpayer receive two different notices from the IRS; specifically, (1) Notify the taxpayer that he is the subject of a criminal tax investigation; and (2) notify the taxpayer in writing that the IRS will treat his partnership items as nonpartnership items.  We further note that the Court of Appeals for the Second Circuit in <u>Transpac Drilling Venture 1982-12 v. Commissioner</u>, <u>supra</u>, in reversing this Court, did not hold section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., <u>supra</u>, invalid, nor did the Court of Appeals attempt to construe the regulation in the manner in which petitioners urge.  Rather, the Court of Appeals held, on the basis of the facts therein, that where a serious conflict of interest precludes the faithful exercise of the TMP's fiduciary duties to the limited partners and partnerships, the regulation does not prescribe the sole grounds under which a TMP will be removed following the commencement of a criminal investigation. See <u>id.</u> at 225-227.

Finally, we note that case law in the Ninth Circuit, in which this case would be appealable, supports our decision as to the validity of section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra. In In re Leland, 160 Bankr. 834, 836 (E.D. Cal. 1993), the bankruptcy court stated:

> The debtors [sic] argument that Hoyt's partnership items became nonpartnership items as of the date his criminal investigation began is simply unsupported and ignores the entirety of * * * [section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra.]

Though we agree with petitioners that the bankruptcy court's reliance on language from Chef's Choice Produce, Ltd. v. Commissioner, 95 T.C. 388 (1990), is misplaced, the bankruptcy court cited the plain and unequivocal language of the regulation in sustaining its dual requirements.

Additionally, the bankruptcy court in In re Miller,[13] 174 Bankr. 791, 796 (E.D. Cal. 1994), affd. 81 F.3d 169 (9th Cir. 1996), stated:

> Miller also argues that the regulations are in conflict with the Internal Revenue Code and by merely showing that Hoyt was under criminal investigation, Hoyt's status as a TMP was terminated. We disagree. If this were true, no party with any certainty would know when a criminal investigation began in order to terminate a TMP's status. This uncertainty would undermine one of the main goals in enacting TEFRA.

* * * * * * *

---

[13] Counsel for petitioners also served as counsel for the taxpayers in In re Leland, 160 Bankr. 834 (E.D. Cal. 1993), and in In re Miller, 174 Bankr. 791 (E.D. Cal. 1994), affd. 81 F.3d 169 (9th Cir. 1996).

The regulations promulgated by the Secretary are not manifestly contrary to the statute as Miller suggests. Rather, the Secretary enacted Temporary Treasury Regulation Section 301.6231(c)-5T to carry out the provisions of 26 U.S.C. section 6231(c)(2) and its purpose.

Hoyt's authority as the designated TMP could not be terminated based on the criminal investigation until he received written notification from the IRS of the conversion of items to nonpartnership. In summary, it is both the regulations and the Internal Revenue Code which provides that the TMP designation shall be terminated upon the criminal investigation and the written notification that partnership items shall be treated as nonpartnership items. Therefore, we hold that the TMP had authority to enter into consents with the IRS to extend the time for assessments and bind Miller to the extensions. [Fn. ref. omitted.]

We conclude that the Secretary's regulatory treatment of the partnership items of partners under criminal tax investigation comports with the language of section 6231(c) and hold section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, is a valid regulation. In this case the record clearly reflects that the IRS did not notify Mr. Hoyt that his partnership items would be treated as nonpartnership items. Pursuant to the provisions of section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, the commencement of a criminal tax investigation of a partner in a TEFRA partnership does not necessarily or immediately interfere with the effective and efficient enforcement of the internal revenue laws and require the treatment of partnership items as nonpartnership items in every situation.

6.    Removal of TMP for Violating a Fiduciary Duty

Petitioners contend that Mr. Hoyt should have been removed as TMP by the IRS because of a conflict of interest between Mr. Hoyt's fiduciary duty to petitioners, as partners of the Hoyt partnerships, and his self-interest as the subject of several criminal tax investigations.

Petitioners rely on Transpac Drilling Venture 1982-12 v. Commissioner, 147 F.3d 221 (2d Cir. 1998), contending that Transpac holds that the Commissioner has no discretion and must remove a TMP who is under criminal tax investigation.

However, the Transpac decision involved distinguishable facts.  In Transpac, the IRS began a civil tax audit of the Transpac partnerships in the latter part of 1983.  By November 1985, however, the civil audit had uncovered issues which were referred to CID for criminal investigation.  See id. at 223.

While the criminal investigation was proceeding, the IRS approached limited partners of the Transpac partnerships and asked them to sign extension agreements for the 1982 taxable year.  Most of the limited partners refused, so the IRS then approached the partnership's TMP's and made the same extension requests.  The TMP's acquiesced and executed the extension agreements and thereafter continued to execute extension agreements through March 1988.[14]  See id. at 224.

--------

[14]    As the IRS did not issue FPAA's until November 1989, the 3-year period of limitations would have expired but for the signed extensions.

The TMP's approached by the IRS were themselves under criminal tax investigation, as was the primary promoter of the Transpac partnerships, who was already a convicted tax felon. Sometime during the course of the criminal tax investigations, the TMP's became cooperating Government witnesses whose own sentencing, or grants of immunity, depended on their cooperation with the Government. See id. at 223.

In addition, the Court of Appeals for the Second Circuit found that when the limited partners in the Transpac partnerships inquired about the status of the civil audits, the IRS misled the limited partners by telling them to ask for information from the TMP's, who in turn had been expressly ordered not to disclose any information about the existence of the criminal investigation. See id. at 227.

In Transpac, the Court of Appeals reasoned that "where serious conflicts exist, a TMP may be barred from acting on behalf of the partnership, quite apart from the issuance of a government letter under current Regulation 301.6231(c)-5T". Id. The Court of Appeals proceeded to hold that the TMP's in that case had a serious conflict of interest which voided their consents to the extensions of the periods of limitations. The Court of Appeals found it "especially disquieting" that the IRS knew the extensions were unwanted by the limited partners on whose behalf the TMP's purported to act. See id. The Court of Appeals noted that the IRS, before seeking extensions of the periods of limitations from the TMP's, had already transformed

its civil audits of the partnerships into criminal investigations of the TMP's. The Court of Appeals reasoned that the conversion of the civil audits into criminal investigations created a powerful incentive on the part of the TMP's to ingratiate themselves with the Government and to ignore their fiduciary duties to the limited partners. See id.

We emphasize that in Transpac the TMP's executed the extension agreements near the time the TMP's were cooperating with the Government in anticipation of either grants of immunity or sentencing agreements. See id. at 223-224. The TMP's in Transpac became Government witnesses, owing to their cooperation with Government investigators.[15] The Court of Appeals essentially found therefore that the TMP's had a disabling conflict of interest that prevented them from faithfully discharging their fiduciary duties to the limited partners.

Unlike Transpac, there is no evidence in this case that: (1) The IRS approached limited partners to execute any extension agreements or that they refused to sign such agreements; (2) the promoter/TMP of the Hoyt partnerships was, before or during the relevant period, indicted or convicted of a tax felony or cooperating with the Government as a witness; or (3) the IRS misled partners of the Hoyt partnerships about the existence of

---

[15] Two of the TMP's were granted immunity from prosecution, while the third entered into a plea bargain resulting in a suspended sentence.

criminal investigations or ever instructed Mr. Hoyt to say nothing about such criminal tax investigations.

In addition, the record reflects that the criminal investigations of Mr. Hoyt ended prior to Mr. Hoyt's execution of every one of the extension agreements in issue except one. Only one of the extension agreements for the years in issue, concerning the 1983 taxable year of SGE 83-2, was executed by Mr. Hoyt while he was under criminal tax investigation.

In Olcsvary v. United States, 240 Bankr. 264, 266-267 (E.D. Tenn. 1999), the United States Bankruptcy Court for the Eastern District of Tennessee stated:

> There is no evidence that Hoyt had any contact with the investigators at all, much less that he executed the extensions under pressure for leniency. Indeed, since these tax investigations never resulted in prosecution, it is possible that Hoyt viewed them with contempt or haughty disdain rather than fear. * * *
>
> * * * * * * *
>
> The [Court of Appeals] in Transpac did not assume that the mere existence of an investigation would subvert a tax matters partner's judgment and bend him to the government's will in dereliction of his fiduciary duties to his partners. * * *

Mr. Hoyt continued to promote the existing Hoyt partnerships after the initiation of the criminal tax investigations. Mr. Hoyt continued to defend his legal position throughout the criminal tax investigations and continued to maintain that all partnership items were legitimate, a legal position which was consistent with that of his partners.

Mr. Hoyt also encouraged the limited partners to refuse to cooperate with Government investigators. W.J. Hoyt & Sons sent letters to some limited partners telling them that they could refuse to be deposed by the IRS, and, if already deposed, that they could refuse to sign the interview transcript.

In sum, we are not persuaded that Mr. Hoyt had a disabling conflict of interest in this case or violated his fiduciary duty to petitioners. On the basis of the record, we find and hold that Mr. Hoyt did not have a conflict of interest which required the removal of his TMP designation or invalidated the extensions of the periods of limitations.

## 7. Abuse of Discretion by Respondent

Petitioners contend that respondent's failure to send a written notice to Mr. Hoyt, informing him that his partnership items would be treated as nonpartnership items pursuant to section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), was an abuse of discretion. Petitioners assert that, because Mr. Hoyt was the subject of criminal investigations and because certain IRS officials countersigning the extension agreements knew of the criminal tax investigations of Mr. Hoyt, the failure of the IRS to notify Mr. Hoyt that his partnership items would be treated as nonpartnership items was arbitrary and unreasonable.

Petitioners once again rely on Transpac Drilling Venture 1982-12 v. Commissioner, 147 F.3d 221 (2d Cir. 1998), in which the Court of Appeals disagreed with this Court's conclusion that

the Commissioner had not abused his discretion by failing to terminate a TMP's status.

The taxpayer has the burden of proof when alleging an abuse of discretion.  See <u>Capitol Fed. Sav. & Loan Association v. Commissioner</u>, 96 T.C. 204, 210 (1991).

The parties have stipulated that the IRS has no formal criteria to determine when, or whether, a written notice notifying a partner that his partnership items will be treated as nonpartnership items is to be sent to a taxpayer who is the subject of a criminal tax investigation.  The IRS makes each determination upon the particular facts of each case.

As previously indicated, the <u>Transpac</u> decision involved distinguishable facts, and petitioners have not alleged the facts that the Court of Appeals for the Second Circuit found so disquieting.  Here, petitioners are unable to show that respondent's actions in continuing to recognize Mr. Hoyt as TMP were unlawful or arbitrary.  Accordingly, we find that petitioners have not established that respondent abused his discretion by not notifying Mr. Hoyt that his partnership items would be treated as nonpartnership items pursuant to section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., <u>supra</u>.

8.  <u>Expiration of Period of Limitations With Regard to TBS J.V.</u>

As a supplemental matter, we address the parties' contentions regarding TBS J.V.'s 1989 and 1990 taxable years. Respondent contends that TBS J.V. failed to file partnership returns for both the 1989 and 1990 taxable years and that

therefore the period of limitations for 1989 and 1990 did not expire before April 17, 1995. Petitioners contend that TBS J.V. filed both a 1989 and a 1990 partnership return and that the existence of an extension agreement executed by Mr. Hoyt for TBS J.V.'s 1989 taxable year is evidence of the timely filing of the underlying 1989 tax return. Petitioners argue that since Mr. Hoyt was not the TMP for the years in issue, he was not authorized to sign the extension for TBS J.V.'s 1989 tax year and the period of limitations for 1989 has therefore expired.

The period for assessing tax attributable to a partnership item shall not expire before 3 years after the later of: (1) The date that the partnership return was filed for the taxable year; or (2) the last date for filing the return for the year (without regard to any extensions). See sec. 6229(a). When no partnership return is filed, adjustments attributable to partnership items may be assessed at any time. See sec. 6229(c)(3).

Respondent has submitted a certified transcript of TBS J.V.'s account for the 1989 and 1990 taxable years showing that the IRS has no record of TBS J.V.'s filing a partnership return for either taxable year through September 23, 1998. Petitioner, however, has been unable to adduce any evidence establishing that TBS J.V. filed a partnership return for either the 1989 or the 1990 taxable year.

The existence of an extension agreement executed by Mr. Hoyt for TBS J.V.'s 1989 taxable year is not evidence of the timely

filing of the underlying 1989 tax return. However, since we have held that Mr. Hoyt was the valid TMP of the Hoyt partnerships for the years in issue, and since petitioners concede that Mr. Hoyt signed an extension agreement for TBS J.V.'s 1989 taxable year, even if a 1989 return had been filed, the period of limitations for the 1989 taxable year would not have expired before April 17, 1995.

Upon the basis of the record, we find that TBS J.V. failed to file partnership returns for both the 1989 and 1990 taxable years and hold that the period of limitations for TBS J.V.'s 1989 and 1990 taxable years did not expire before April 17, 1995.

9.  Conclusion

The parties have stipulated that if this Court finds that the respective periods of limitations had not expired before the mailing of the FPAA's, then the FPAA's were timely and properly sent to the TMP of the Hoyt Partnerships for each of the partnership years in issue.

Upon the basis of the record, we find that Mr. Hoyt was the TMP when he executed extension agreements with respect to the years in issue and, therefore, hold that the periods of limitations with respect to years in issue had not expired pursuant to section 6229(b)(1)(B) as of April 17, 1995.

Because we find that Mr. Hoyt was TMP of the Hoyt partnerships when he executed extension agreements for the years in issue, we need not, and do not, address other issues raised by the parties.

The parties stipulated that if we hold that the extension agreements are valid, which we have, the amounts set forth below are the correct amounts[16] of the deficiencies in petitioners' Federal income taxes and additions to taxes for the years involved herein:

| Year | Deficiency | Sec. 6651(a) | Sec. 6621(c) |
|------|-----------|--------------|--------------|
| 1980 | $3,917 | -0- | Applies |
| 1981 | 17 | -0- | Applies |
| 1982 | 1,248 | -0- | Applies |
| 1983 | 11,334 | $1,043 | Applies |
| 1984 | 1,196 | -0- | Applies |
| 1985 | 4,662 | -0- | Applies |
| 1986 | 8,068 | 139 | Applies |
| 1987 | 3,337 | -0- | None |
| 1988 | 11,831 | 1,562 | None |
| 1989 | 4,776 | 87 | None |
| 1990 | 8,319 | 1,258 | None |
| 1991 | 8,243 | 836 | None |
| 1992 | 6,619 | 9 | None |

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[16] These amounts do not include interest, payments made after the mailing of the notices of deficiency, frozen refunds, or the applicability of any penalty for substantial underpayment of tax.