T.C. Summary Opinion 2009-158


UNITED STATES TAX COURT


JOHN DELGADO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16334-08S.                Filed October 14, 2009.


Samuel L. Milledge, for petitioner.

David E. Whitcomb, for respondent.


LARO, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]Section references are to the applicable versions of the Internal Revenue Code.

Petitioner petitioned the Court under section 6330(d) to review the determination of the Internal Revenue Service Office of Appeals (Appeals) sustaining a proposed levy related to petitioner's assessed Federal income tax liability for 2004. Petitioner asserts that Appeals improperly rejected his original and amended offers-in-compromise. The original offers stated that petitioner would pay $265 to compromise his Federal tax liabilities for 1998 through 2004. Petitioner later submitted the amended offers to compromise tax liabilities for the above years and for 2006 as well. The liabilities underlying the amended offers aggregated $107,426.90 as of June 2, 2008.

We decide whether Appeals abused its discretion in rejecting petitioner's offers. We hold it did not.

## Background

### I. Preliminaries

The parties filed with the Court a stipulation of facts and accompanying exhibits. The stipulated facts are found accordingly. Petitioner resided in Texas when his petition was filed.

### II. Petitioner's 2004 Federal Income Tax Return

On or about May 16, 2005, petitioner filed his 2004 Federal income tax return. On July 14 and September 8, 2006, petitioner submitted offers-in-compromise for 1998 through 2000 and for 2001 through 2004. On November 13, 2006, respondent returned the

offers to petitioner on procedural grounds. Petitioner filed an amended return for 2004 on or about November 20, 2006. On the basis of this return, respondent assessed against petitioner an additional liability of $9,756 with respect to petitioner's 2004 Federal income tax. Immediately afterwards, petitioner's unpaid tax and interest for 2004 totaled approximately $9,500.

III. Hearing

On December 1, 2006, respondent sent to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to Hearing, with respect to his 2004 income tax liability. Five days later, petitioner requested a hearing as to that letter. An Appeals settlement officer, David C. Green (Green), scheduled the hearing for February 14, 2007, as a telephone conference. Petitioner later failed to be available for that conference.

IV. Offer-in-Compromise

A. Submission of Offers-in-Compromise

On or about March 22, 2007, petitioner filed a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals (collection information statement), and two Forms 656, Offer in Compromise, with respect to his 1998 through 2000 liabilities and his 2001 through 2004 liabilities. The Form 433-A reported that petitioner had no disposable income and listed his total income as $4,464, his total expenses as $4,895, and his net equity in assets as zero. The combined offers

proposed one $115 payment and three $50 payments for total payments of $265.

B. <u>Information Requested To Process the Offers</u>

On July 2 and December 17, 2007, Green sent petitioner a request for additional information with respect to processing the offers. The requested information included proof of payment of a loan and of all expenses from April 1 to June 30, 2007, and an explanation of why he reported that one of his requested assets, unimproved land, had a fair market value (FMV) of $5,000 (without consideration of any encumbrance on the land).[2]

C. <u>Rejection of the Offers</u>

On January 28, 2008, Green sent petitioner a letter scheduling a face-to-face hearing for February 14, 2008. Petitioner attended that hearing, and he and Green discussed certain issues, including petitioner's request for an offer-in-compromise as a collection alternative. On March 13, 2008, petitioner sent Green a letter with the additional information that he requested. On April 10, 2008, Green sent a letter to petitioner explaining that Appeals was rejecting the offers and stating the reasons for the rejection.

---

[2]Petitioner reported that the current value (defined on Form 433-A as "the amount you could sell the asset for today") of the unimproved land was $5,000. Petitioner asserted this amount by discounting his valuation of the unimproved land, $6,250, by 20 percent.

On April 14, 2008, petitioner submitted amended offers-in-compromise as to the same years as before, plus 2006. On May 2, 2008, Green sent a letter to petitioner explaining that Appeals was likewise rejecting those amended offers and stating the reasons for the rejection.

On May 29, 2008, Appeals sent to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice) with respect to his 2004 income tax liability. The notice stated that Appeals was sustaining respondent's proposed levy for 2004.

## Discussion

### I. Abuse of Discretion

#### A. Standard

We decide whether Appeals abused its discretion in rejecting petitioner's offers-in-compromise and sustaining respondent's proposed levy for 2004. Where an underlying tax liability is not at issue in a collection due process case, we review the Appeals determination under an abuse of discretion standard. Sego v. Commissioner, 114 T.C. 604, 610 (2000).

#### B. Burden of Proof

Taxpayers such as petitioner generally bear the burden of proving that Appeals abused its discretion. Phillips v. Commissioner, 114 T.C. 115 (2000), affd. 272 F.3d 1172 (9th Cir. 2001). We will reject the determination of Appeals under such a

standard only if the determination is arbitrary, capricious, or without sound basis in fact or in law. Murphy v. Commissioner, 125 T.C. 301, 308, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

II. Offer-in-Compromise

Section 6330(c)(2)(A)(iii) allows a taxpayer to offer to compromise Federal tax liabilities as a collection alternative to a proposed levy. Section 7122(c) and (d) authorizes the Commissioner to prescribe guidelines to determine when a taxpayer's offer-in-compromise should be accepted. In determining whether to accept an offer-in-compromise, Appeals generally must compare the taxpayer's offer with a defined reasonable collection potential. Appeals may accept the offer when it is unlikely that the tax liability can be collected in full and the amount offered reflects the reasonable collection potential.

III. Reasonable Collection Potential

A. Petitioner's Objection to the Evaluation of His Offers

In the petition, petitioner mainly objected to Appeals' calculation of future income and its valuation of properties, the two primary components of reasonable collection potential. A taxpayer's future income for short-term periodic payment offers (the type of offer in this case) equals the taxpayer's expected future income minus necessary living expenses multiplied by 48 months (net disposable income). 1 Administration, Internal

Revenue Manual (IRM) (CCH), pt. 5.8.4.4.1, at 16,335 (Sept. 23, 2008).

B. <u>Calculation of Necessary Living Expenses</u>

The parties agree with Appeals' calculation of petitioner's expected future income. They disagree, however, with the calculation of his necessary living expenses. Petitioner asserts that Appeals wrongly used petitioner's income for 2005 and his expenses for 2007. We disagree. The income used by Appeals was provided to it by petitioner on the Form 433-A, and the expenses reflect petitioner's most recent necessary living expenses after Appeals took into account as to each expense item the lesser of the local standard or the amount actually paid. See 2 Administration, IRM (CCH) pt. 5.15.1.7(4), at 17,692 (May 9, 2008). In sum, Appeals adequately determined that petitioner's future income amounts to $18,192, a monthly net disposable income of $379 ($4,464 in monthly gross income less $4,085 in monthly expenses) over 48 months.

C. <u>Valuation of Assets</u>

Petitioner reported that his assets included the unimproved land and a homestead which he valued at $6,250 and $104,000, respectively. Appeals determined that these values were $55,000 and $111,500, respectively. Petitioner argues that Appeals should have used 80 percent of the FMV of the unimproved land in calculating the value of his equity in that land. The reasonable

collection potential includes the taxpayer's net realizable equity in assets that is defined as "quick sale value (QSV) less amounts owed to secured lien holders with priority over the federal tax lien."  1 Administration, IRM (CCH) pt. 5.8.5.4.1(1), at 16,357 (Sept. 23, 2008).

Appeals calculated the aggregate QSV of the unimproved land and the homestead by adding 90 percent of the FMV of the unimproved land to 80 percent of the FMV of the homestead. Appeals noted that the 90-percent value was appropriate as to the unimproved land because it was investment property.  1 Administration, IRM (CCH) pt. 5.8.5.4.1(3), at 16,357 (Sept. 23, 2008) (stating that although generally QSV is calculated at 80 percent of the FMV, a higher or lower percentage may be appropriate, depending on the type of asset and current market conditions).[3]

Petitioner contests respondent's reliance on IRM pt. 5.8.5.4.1 because, petitioner argues, the part became effective 4 months after the rejection of petitioner's offers.  The same guideline, however, appeared in the predecessor provision which was effective when Appeals valued the land.  We also disagree with petitioner's claim that other land that sold for $27,500 is

---

[3]Even if the 80-percent value was the appropriate gauge of the unimproved land, the value of the assets would be more than $27,000 in excess of petitioner's $265 offers.  Thus, this would not materially change the determination that petitioner's offers were insufficient.

the best indicator of the FMV of his unimproved land.  That sale was subsequent to the valuation date and was a foreclosure.

IV.  Conclusion

Appeals complied with the applicable provisions in the Internal Revenue Manual in evaluating the reasonable collection potential and in properly rejecting petitioner's offers of $265 to compromise $107,426.90 of his tax liabilities.  Petitioner had sufficient assets and expected future income that totaled significantly more than he offered to compromise those liabilities.  Thus, we hold that Appeals did not abuse its discretion in rejecting the $265 offers-in-compromise and in sustaining respondent's proposed levy for 2004.

In so holding, we are not in position to determine the amount of any compromise that petitioner could or should be required to pay, or that respondent is required to accept.  The only issue before us is whether Appeals abused its discretion in refusing petitioner's $265 offers-in-compromise.  See Hansen v. Commissioner, T.C. Memo. 2007-56, affd. in part and vacated in part on another issue sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009).

We have considered all of petitioner's arguments for a contrary holding and have found those arguments not discussed herein to be without merit.  Accordingly,

<u>Decision will be entered</u>

<u>for respondent</u>.