T.C. Memo. 2003-138

UNITED STATES TAX COURT

JOHN M. MEKULSIA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10480-00.                    Filed May 15, 2003.

Terri A. Merriam and Wendy S. Pearson, for petitioner.

Thomas A. Dombrowski, Catherine L. Campbell, Julie L. Payne,

Thomas N. Tomashek, and Dean H. Wakayama, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge:  This case was assigned to Special Trial

Judge Stanley J. Goldberg pursuant to the provisions of section

7443A(b)(5) and Rules 180, 181, and 183.[1]  The Court agrees with

_____

[1]  Unless otherwise stated, all section references are to
the Internal Revenue Code in effect at the time the petition was
                                              (continued...)

and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

GOLDBERG, Special Trial Judge:  On August 14, 2000, respondent issued a notice of final determination denying petitioner's claim under section 6404(e) for abatement of interest related to petitioner's 1982 through 1987 taxable years. Petitioner timely filed a petition with this Court under section 6404(i)[2] and Rules 280 through 284[3] to review respondent's determination.

Shortly before the scheduled trial date, respondent filed a motion under Rule 120(a) for judgment on the pleadings.  The motion was taken under consideration, and the trial proceeded on the merits.

The only issue for decision is whether respondent abused his discretion in denying petitioner's request to abate interest

---

[1](...continued)
filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Sec. 6404(i) was redesignated sec. 6404(h) by the Victims of Terrorism Tax Relief Act of 2001, Pub. L. 107-134, sec. 112(d)(1)(B), 115 Stat. 2435 (2002).

[3]  Sec. 6404(i), as cited throughout this opinion, was originally enacted as sec. 6404(g) by the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 302, 110 Stat. 1457 (1996). Sec. 6404(g) was redesignated sec. 6404(i) by the Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 743, 745.

related to the taxable years 1982 through 1987.

FINDINGS OF FACT

Some of the facts in this case have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by reference. At the time the petition was filed, petitioner resided in Painesville, Ohio.

A. Brief Overview of the Hoyt Organization

From about 1971 through 1998, Walter J. Hoyt III (Jay Hoyt) organized, promoted to thousands of investors, and operated as a general partner more than 100 partnerships.[4] The partnerships were organized to own, breed, and manage cattle. Jay Hoyt was the tax matters partner (TMP) for a majority of the partnerships and was also an enrolled agent with the Internal Revenue Service (IRS).

Dating back to the early 1980s, the record-keeping practices of the Hoyt organization were very poor. During the years at issue, often no records were kept at all. Many of the documents, records, and tax returns the Hoyt organization prepared relating to the cattle partnerships were inaccurate, unreliable, and in many instances falsified. The Hoyt organization's poor record keeping made the IRS's efforts to examine the partnerships difficult.

---

[4] For a detailed discussion of the Hoyt organization and cattle operations see Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003).

After approximately 1980, the IRS regularly examined many of the partnership returns of the numerous Hoyt investor partnerships and the individual returns of their partners. Believing the partnerships to be abusive tax shelters, the IRS generally disallowed the partnership tax benefits that each investor partnership and its respective partners claimed, resulting in those partnerships' and partners' commencing numerous cases in the Tax Court.

The Hoyt organization is no stranger to this Court. Since 1989, the Hoyt organization's investor partnerships have been involved in Tax Court litigation for tax years from 1977 through 1996. See Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); River City Ranches #4, J.V. v. Commissioner, T.C. Memo. 1999-209, affd. 23 Fed. Appx. 744 (9th Cir. 2001); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515; Bales v. Commissioner, T.C. Memo. 1989-568.

On February 12, 2001, Jay Hoyt was convicted in the U.S. District Court for the District of Oregon of 1 count of conspiracy to commit fraud, 31 counts of mail fraud, 3 counts of bankruptcy fraud, and 17 counts of money laundering. See United States v. Barnes, No. CR 98-529-JO-04 (D. Or. Feb. 12, 2001), affd. 47 Fed. Appx. 834 (9th Cir. 2002). He was sentenced to 235

months of imprisonment and ordered to pay restitution to the victims of his crimes.

B.  Criminal Tax Investigations of Jay Hoyt

After the initial IRS examinations of the many cattle partnerships, several criminal investigations relating to Jay Hoyt's activities were commenced by the IRS's Criminal Investigation Division (CID).

From April 23, 1984, until April 21, 1986, CID conducted an investigation of Jay Hoyt for allegedly backdating documents to enable 12 investor-partners to claim improper deductions and credits.  On April 21, 1986, CID referred the case to IRS District Counsel, recommending prosecution.  On July 31, 1986, the IRS District Counsel's Office in Sacramento, California, referred the matter to the Department of Justice (DOJ) for prosecution.  The DOJ then forwarded the matter to the U.S. Attorney's Office in Sacramento for review and consideration.  On August 12, 1987, the U.S. Attorney's Office declined to prosecute Jay Hoyt.

On or about July 28, 1989, a member of the IRS Examination Division team examining Hoyt partnership returns for the 1983 through 1986 taxable years recommended that the CID investigate Jay Hoyt for allegedly making and/or assisting in fraudulent or false tax return statements in connection with his promotion and operation of the cattle partnerships.  On October 13, 1989, the

U.S. Attorney's Office requested that the CID review certain information and determine whether IRS special agents from the CID should join in an ongoing grand jury investigation of Jay Hoyt for possible violations of the internal revenue laws. On October 17, 1989, the CID accepted the Examination Division's fraud referral and commenced an investigation. On November 3, 1989, the IRS Regional Counsel's Office requested that IRS special agents be authorized to participate in the grand jury investigation. On October 2, 1990, the U.S. Attorney's Office ended the grand jury investigation of Jay Hoyt without an indictment.

On or about August 31, 1993, the CID commenced an investigation of Jay Hoyt for possible criminal violations of the internal revenue laws on account of his alleged misrepresentation of the total number and value of purported cattle that the Hoyt cattle partnerships allegedly owned. The CID closed the investigation on or about October 7, 1993, without a recommendation that the IRS attempt to have Jay Hoyt prosecuted.

On or about September 8, 1995, the CID commenced an investigation of Jay Hoyt for possible criminal violations of the internal revenue laws relating to the alleged shortage of cattle from the Hoyt cattle partnerships. The CID closed this investigation on September 29, 1995, without a recommendation that the IRS attempt to have Jay Hoyt prosecuted.

On at least four separate occasions, from April 1984 through September 1995, Jay Hoyt was under criminal investigation for violation of the internal revenue laws. Respondent never notified Jay Hoyt that he was under criminal investigation or removed him as the TMP of Shorthorn Genetic Engineering 1985-1 (SGE) as a result of any of these criminal tax investigations.

C. Petitioner's Involvement With the Hoyt Organization

Starting in 1985, petitioner began investing in cattle partnerships promoted by the Hoyt organization. According to the petition filed in this case, petitioner was a partner in SGE, Timeshare Breeding Syndicate, J.V., and Timeshare Breeding Syndicate 1987-2. As the interest of which he seeks abatement in this case accrued on assessments of income tax against petitioner for tax years 1982 through 1987, solely on the basis of his participation in SGE during 1985 and 1986, our analysis is limited to the tax implications of petitioner's association with the SGE partnership only.

Petitioner was a partner in SGE from 1985 through 1996. SGE was a partnership subject to the provisions of sections 6221 through 6233.[5] On SGE's 1985 and 1986 partnership tax returns, Jay Hoyt was designated the TMP.

_____

[5] The unified partnership audit and litigation provisions of secs. 6221-6223 were first enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648, and are generally applicable to partnership taxable years beginning after Sept. 3, 1982.

For the 1985 tax year, SGE issued petitioner a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., reporting petitioner's distributive share of the ordinary loss from the partnership in the amount of $30,270 and property eligible for investment credit in the amount of $155,760. On his 1985 Form 1040, Individual Income Tax Return, petitioner deducted from his total income the $30,270 of ordinary loss passed through from SGE and claimed a $729 general business credit relating to SGE.

After his 1985 income tax return was filed, petitioner filed a Form 1045, Application for Tentative Refund, requesting a refund of income tax for the 1982, 1983, and 1984 tax years. Petitioner's refund request was based on carrying back to those tax years unused general business credits relating to his distributive share of qualified investment property from SGE for 1985.

SGE issued petitioner a Schedule K-1 for 1986, reporting petitioner's distributive share of the ordinary loss from the partnership in the amount of $36,324. On his 1986 individual tax return, petitioner deducted from his total income the $36,324 of ordinary loss passed through from SGE and claimed an $842 general business credit relating to SGE that he carried forward from the previous year.

On petitioner's 1987 individual income tax return, he claimed a $319 general business credit relating to SGE that he carried forward from his 1985 income tax return.

D.  Respondent's Examination of SGE for 1985 and 1986

On December 17, 1987, respondent sent a notice of beginning of administrative proceeding (NBAP) to Jay Hoyt, the TMP of SGE. The notice informed the TMP that respondent was beginning an examination of SGE for the 1985 and 1986 tax years.

On July 20, 1988, respondent sent an NBAP to petitioner notifying him that an examination was beginning on SGE for the 1985 tax year.  On September 12, 1988, respondent sent petitioner an NBAP relating to SGE for the 1986 tax year.

On February 28, 1989, an examiner with the IRS signed Form 4665, Report Transmittal, and Form 4605-A, Examination Changes-- Partnerships, Fiduciaries, Small Business Corporations, and Domestic International Sales Corporations.  Both forms related to the IRS's examination of SGE for the 1985 tax year.

In the Report Transmittal, the examiner discussed the difficulties encountered in obtaining SGE's records from the TMP. The examiner recommended issuing a notice of final partnership administrative adjustment (FPAA) because the lack of adequate records did not allow respondent to perform a normal examination, and the parties were in complete disagreement over the issues.

On Form 4605-A, the examiner made examination changes to SGE's 1985 partnership tax return as follows: (1) An adjustment reducing the partnership's ordinary loss of $952,586 to zero; and (2) an adjustment reducing the cost or other basis of qualified investment property from $6,246,500 to zero.

On May 2, 1989, the same examiner signed Form 4665 and Form 4605-A for SGE's 1986 tax year. The Report Transmittal for the 1986 tax year was essentially identical in all material respects to the report completed for the previous year.

On Form 4605-A, the examiner made examination changes to SGE's 1986 partnership tax return as follows: (1) An adjustment reducing the partnership's ordinary loss of $1,856,560 to zero; and (2) an adjustment reducing payments to individual retirement accounts (IRA) and Keogh accounts totaling $60,000 to zero.

On June 13, 1989, respondent issued an FPAA to petitioner and Jay Hoyt, as TMP of SGE, relating to the partnership return filed for the 1985 tax year. In the Explanation of Adjustments included with the FPAA, respondent adjusted the 1985 claimed partnership expenses totaling $962,586 to zero and adjusted the value of the qualified investment property claimed from $6,246,500 to zero. The explanation listed 12 reasons why SGE was "entitled to no items of ordinary loss, deduction, credit, or other items of tax benefit." Further, the explanation stated that the partners of SGE were not entitled to their distributive

shares of partnership items reported on the partnership return for 1985.

On July 2, 1990, respondent issued an FPAA to petitioner and SGE's TMP relating to the partnership return filed for the 1986 tax year. In the Explanation of Adjustments included with the FPAA, respondent made adjustments to SGE's partnership return reducing all items reported during the 1986 tax year to zero. The following items reported on SGE's 1986 partnership return were reduced to zero: (1) Farm income totaling $123,434; (2) farm deductions totaling $1,948,760; (3) guaranteed payments totaling $31,234; (4) IRA payments totaling $52,000; (5) Keogh payments totaling $8,000; and (6) self-employment loss totaling $1,825,326. Again, the explanation listed the various reasons why SGE was not entitled to the items reported and why the partners were not entitled to their distributive shares of those items.

E.  Litigation Relating to SGE for Tax Years 1985 and 1986

On September 8, 1989, a petition was filed in the Tax Court at docket No. 22069-89, contesting the determinations made by respondent in the FPAA for SGE's 1985 tax year. On October 1, 1990, a petition was filed with this Court at docket No. 21954-90, contesting the determinations made in the FPAA for SGE's 1986 tax year.

By May 1993, the TMPs of many of the Hoyt partnerships had filed Tax Court petitions. On May 20, 1993, respondent and Jay Hoyt, acting as TMP, entered into a memorandum of understanding (MOU). The MOU outlined a basis for a settlement of all outstanding cattle partnership cases pending before the Court for the 1980 through 1986 tax years. The MOU included a basis of settlement for the SGE partnership with respect to its 1985 and 1986 tax years.

After memorializing the MOU, the parties were unable to reach an agreement on settlement documents reflecting the terms outlined in the MOU. As a result, on or about October, 14, 1994, the parties jointly moved to consolidate several of the cattle partnership cases, including docket Nos. 22069-89 and 21954-90, for trial, briefing, and opinion.

On November 20, 1996, the Court issued its opinion with respect to the consolidated cases resulting from the MOU. See Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515. The Court held that the settlement agreement reflected in the MOU was binding on the parties. Accordingly, on November 27, 1996, the Court entered orders and decisions reflecting its determinations with respect to the 1985 and 1986 tax years of SGE.

On January 29, 1997, the following documents were filed in the consolidated cases: (1) A motion for leave to file out of

time a motion to vacate; (2) a motion for leave to file out of time a motion for reconsideration of findings of fact and opinion; and (3) a request for a rehearing. On February 4, 1997, the Court granted both of the motions and the request.

On July 14, 1997, the Court denied (1) the motion to vacate, (2) the motion for reconsideration of findings of fact and opinion, and (3) the request for a rehearing.

F.  Assessment of Income Tax and Computation of Interest

On February 27, 1998, respondent sent petitioner a Form 4549A-CG, Income Tax Examination Changes, for each of the tax years 1982 through 1987. For each of those tax years, the form and attached explanations detailed the adjustments made to petitioner's individual tax returns and calculated the deficiencies in each year's income tax. In addition, the explanations for each year informed petitioner that respondent had determined that a part of his underpayment of tax was attributable to tax-motivated transactions as defined in section 6621(c).[6] The 1982 through 1987 adjustments made to petitioner's tax returns were based on his participation in SGE during the

---

[6] The Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. 101-239, sec. 7721(b), 103 Stat. 2399, repealed sec. 6621(c). This repeal was effective for returns the due date for which (determined without extensions) is after Dec. 31, 1989. See OBRA sec. 7721(c), 103 Stat. 2400.

1985 and 1986 tax years and the holding in <u>Shorthorn Genetic</u>
<u>Engg. 1982-2, Ltd. v. Commissioner</u>, <u>supra</u>.

On the basis of the disallowed tax benefits claimed by
petitioner relating to SGE, respondent assessed income tax
deficiencies against petitioner in the amounts determined for
each year in each Form 4549A-CG.  The tax years, the assessment
dates, and the amounts of income tax deficiencies assessed
petitioner are as follows:

| Tax Year | Assessment Date | Assessment Amount |
|---|---|---|
| 1982 | 4-6-1998 | $3,183 |
| 1983 | 4-6-1998 | 4,483 |
| 1984 | 4-6-1998 | 5,863 |
| 1985 | 4-6-1998 | 6,861 |
| 1986 | 4-6-1998 | 9,697 |
| 1987 | 3-30-1998 | 319 |

Respondent prepared an Interest and Penalty Detail Report
for each tax year from 1982 through 1987 based on the total
amount of income tax assessed and the applicable interest rates
determined pursuant to section 6621.  Each report shows in detail
the computations used to determine the amount of interest on
petitioner's income tax deficiencies.  The tax year of each
deficiency, the dates during which the interest accrued, and the
total amount of interest calculated are as follows:

| Year | Dates Interest Accrued From | To | Total Amount of Interest |
|---|---|---|---|
| 1982 | 4-15-1986 | 3-26-2001 | $12,984.50 |
| 1983 | 4-15-1986 | 3-26-2001 | 18,361.00 |
| 1984 | 4-15-1986 | 3-26-2001 | 24,013.15 |
| 1985 | 6-9-1986 | 3-26-2001 | 27,474.28 |

| 1986 | 4-15-1987 | 3-26-2001 | 34,547.54 |
| 1987 | 4-15-1988 | 3-26-2001 | 14.91 |

As a result of petitioner's making a deposit in the nature of a cash bond in the amount of $197,000 on March 26, 2001, respondent stopped interest from accruing on that date.

G.  Petitioner's Interest Abatement Claim

On June 3, 1998, petitioner initiated correspondence with respondent requesting an explanation for respondent's imposing interest relating to a tax-motivated transaction pursuant to section 6621(c).  More specifically, petitioner wanted respondent to provide his basis for determining that petitioner's investment in SGE was a tax-motivated transaction.  Respondent treated this letter as an informal claim for interest abatement.

On June 22, 1998, respondent denied petitioner's informal claim for abatement of interest for the 1982 through 1987 tax years.  Respondent stated that tax-motivated interest was applicable on account of the abusive nature of the SGE partnership.  In addition, respondent determined that there was no delay or error relating to the performance of a ministerial act warranting abatement of interest.  The correspondence from respondent informed petitioner that he could request reconsideration of respondent's findings with the IRS Appeals Office.

On July 22, 1998, petitioner appealed respondent's denial of the informal interest abatement claim.  Specifically, petitioner

requested an abatement of all the interest accrued on his assessed income tax liabilities for tax years 1982 through 1987. Petitioner based the request for interest abatement on his assertion that the interest accrued because of delays caused by employees of the IRS in performing ministerial or managerial acts when conducting the audits of SGE. Further, petitioner argued for abatement of the increased section 6621(c) interest because he claimed that respondent lacked "any factual or legal predicate for imposing tax motivated interest."

On August 27, 1998, petitioner sent respondent a letter supplementing his interest abatement appeal. Petitioner asserted the same arguments as those raised in the July 22, 1998, appeal but acknowledged that for the years prior to 1996 only delays caused by ministerial acts were considered for interest abatement claims.

On October 19, 1998, petitioner sent respondent another letter further supplementing his interest abatement appeal. In this supplement, petitioner asserted that respondent's failure to remove Jay Hoyt as the TMP of SGE after he was under a criminal tax investigation was an error in performing a ministerial act that caused delays resulting in the accrual of interest. Petitioner based this assertion on his claim that section 6231(c) and section 301.6231(c)-5T, Temporary Proceed. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), require the Commissioner to remove

a TMP under a criminal investigation for the violation of internal revenue laws.

On July 27, 2000, an associate chief in the Appeals Office approved the recommendation of an Appeals officer denying petitioner's appeal of the denial of his informal interest abatement claim. In Form 5402-c, Appeals Transmittal Memorandum and Case Memo, the Appeals officer addressed each of petitioner's arguments and determined that interest abatement was not warranted.

Specifically, the Appeals officer concluded that the decision to remove a TMP under criminal investigation pursuant to section 6231(c) and the corresponding regulation is not a ministerial act, but rather is an act involving the Commissioner's judgment and discretion. On the basis of the determination that failure to remove Jay Hoyt as the TMP was not an error or delay in performing a ministerial act, the Appeals officer recommended that interest not be abated. Further, the Appeals officer addressed petitioner's other arguments that actions taken by respondent showed a pattern of unfair conduct and concluded that these claims did not warrant interest abatement.

In addition, the Appeals officer made a determination that the increased interest rate pursuant to section 6621(c) was

correctly determined because of petitioner's involvement in a tax-motivated transaction.

On August 14, 2000, respondent issued petitioner a final determination letter disallowing petitioner's request for interest abatement for the tax years 1982 through 1987. Respondent based the disallowance on the fact that no errors or delays that merit interest abatement were discovered in respondent's review of available records and other information. Respondent informed petitioner that he could file a Tax Court petition for a review of respondent's denial of interest abatement if he disagreed with the final determination.

OPINION

A.  The Commissioner's Authority To Abate Interest

In general, interest on an underpayment of income tax begins to accrue on the due date of the return for the tax and continues to accrue, compounded daily, until payment is made.  See secs. 6601(a), 6622(a).

Pursuant to section 6404(e)(1), as it applies in this case, the Commissioner may abate the assessment of interest on:  (1) Any deficiency attributable to any error or delay by an officer or employee of the IRS in performing a ministerial act, or (2) any payment of any tax described in section 6212(a) to the extent that any error or delay in payment is attributable to the

officer's or employee's being erroneous or dilatory in performing a ministerial act.[7]

A ministerial error or delay by an officer or employee (without distinction, employee) of the IRS is taken into account only if no significant aspect of the error or delay can be attributed to the taxpayer. Sec. 6404(e)(1). In addition, only errors or delays occurring after the IRS has initially contacted the taxpayer in writing with respect to the deficiency or payment are taken into account. Id. Thus, abatement of interest for the period between the date the tax return is filed and the date the Commissioner commences an audit is not permitted under section 6404(e). Sims v. Commissioner, T.C. Memo. 1999-414 (citing H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844).

The temporary regulations interpreting section 6404(e) define the term "ministerial act" as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13,

---

[7] Sec. 6404(e) was amended by TBOR 2 sec. 301(a)(1) and (2), 110 Stat. 1457, to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" or ministerial acts. The amendment applies to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996. Accordingly, the amendment is inapplicable in the present case.

1987).[8] "A ministerial act is a nondiscretionary procedural act that the Commissioner is required to perform." <u>Camerato v. Commissioner</u>, T.C. Memo. 2002-28. In contrast, acts that either are managerial or arise out of general administrative decisions are not ministerial. <u>Id.</u> "Abatement is not available for managerial acts during the tax years at question and has never been available for actions or nonactions attributable to general administrative decisions." <u>Id.</u> Further, a decision concerning the proper application of Federal tax law, or other applicable Federal or State laws, is not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., <u>supra</u>.

Even where errors or delays are present, the Commissioner's decision to abate interest remains discretionary. See sec. 6404(e)(1). When Congress enacted section 6404(e), it did not intend the provision to be used routinely to avoid payment of interest. Rather, Congress intended abatement of interest to be used sparingly, only where failure to do so "would be widely

---

[8] The final regulations under sec. 6404, as issued on Dec. 18, 1998, contain the same definition of ministerial act. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs. The final regulations generally apply to interest accruing on deficiencies or payments of tax described in sec. 6212(a) for taxable years beginning after July 30, 1996. See sec. 301.6404-2(d)(1), Proced. & Admin. Regs. Accordingly, as the final regulations are inapplicable in the present case, sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), effective for taxable years beginning after Dec. 31, 1978, but before July 30, 1996, applies. See sec. 301.6404-2T(c), Temporary Proced. & Admin. Regs, <u>supra</u>.

perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

B.  Jurisdiction of the Tax Court

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. Sec. 7442; Naftel v. Commissioner, 85 T.C. 527, 529 (1985). In proceedings brought by a taxpayer for a review of the Commissioner's denial of the taxpayer's request to abate interest, as in the present case, the jurisdiction of this Court is limited solely to a determination as to whether the Commissioner abused his discretion in declining to abate any portion of the interest under section 6404. See sec. 6404(i); Vanstone v. Commissioner, T.C. Memo. 2002-133.

"When reviewing the Commissioner's determination pursuant to section 6404, our inquiry is a factual one, and we proceed on a case-by-case basis." Jacobs v. Commissioner, T.C. Memo. 2000-123. Since the Commissioner's power to abate interest involves the exercise of discretion, we give the Commissioner's determination due deference. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). We review the Commissioner's determination not to abate interest applying an abuse of discretion standard. See sec. 6404(i); Camerato v. Commissioner, supra.

The taxpayer bears the burden of proof with respect to establishing an abuse of discretion.  Rule 142(a).  In order to prevail, the taxpayer must establish that in not abating interest the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  Lee v. Commissioner, 113 T.C. 145, 149 (1999); Woodral v. Commissioner, supra at 23.

As a prerequisite to our reviewing the respondent's actions for an abuse of discretion, petitioner must show that the assessment of interest is attributable to some error or delay by an employee of the IRS in performing a ministerial act.  Banat v. Commissioner, T.C. Memo. 2000-141, affd. 5 Fed. Appx. 36 (2d Cir. 2001).  In addition, petitioner must establish a correlation between the alleged error or delay and a specific period over which interest should be abated as a result of that error or delay.  Donovan v. Commissioner, T.C. Memo. 2000-220.

C.  Whether Respondent's Refusal To Abate Interest From December 17, 1987, to August 31, 1990, Was an Abuse of Discretion

Petitioner argues that errors and delays occurred in the audit of SGE for the 1985 and 1986 tax years that warrant interest abatement from December 17, 1987, until August 31, 1990. Petitioner bases his interest abatement claim on his contentions that:  (1) Respondent had sufficient information as of the date

of first contact[9] to issue the FPAAs, yet delayed issuing the FPAAs for almost 3 years; and (2) the original 1985 and 1986 tax year audits were so replete with errors that respondent had to completely reaudit SGE starting in August 1990.

Petitioner's first claim alleges that through (1) document requests in 1986 related to respondent's trial preparation in Bales v. Commissioner, T.C. Memo. 1989-568, and (2) respondent's inspection and count of the Hoyt cattle in 1985 and 1986, respondent obtained and reviewed all the information necessary to issue FPAAs for SGE's 1985 and 1986 tax years by 1987. Petitioner concludes that delays in performing a ministerial act occurred during the audits because the 1985 and 1986 FPAAs were issued well after 1987. However, petitioner has failed to show that respondent's issuance of FPAA's after 1987 constituted delay in the performance of a ministerial act.

It appears that petitioner considers himself entitled to the relief sought merely because of the time that transpired from the date the audits began until the dates the FPAAs were issued. The mere passage of time, however, does not establish error or delay in performing a ministerial act. Hawksley v. Commissioner, T.C. Memo. 2000-354.

---

[9] Respondent's first contact with petitioner for purposes of sec. 6404(e) was Dec. 17, 1987, the date that respondent sent the notice of beginning of administrative proceeding (NBAP) to the tax matters partner for the 1985 tax year.

Determining the precise date on which to issue an FPAA requires the exercise of judgment and discretion on the Commissioner's part. The Commissioner's determination of when to issue an FPAA depends on various factors, including but not limited to: (1) The nature and persuasiveness of the evidence gathered during the examination; (2) the level of cooperation received from the taxpayer; (3) the legitimacy of the information received during the examination; (4) the likelihood of obtaining additional evidence from other sources; (5) the impact of recently decided litigation dealing with similar issues; (6) the impact of a criminal tax investigation involving the taxpayer; (7) the recommendations set forth in the examiner's Report Transmittal; and (8) an overall evaluation of the evidence to determine whether the record supports the adjustments. Accordingly, respondent's determination of when to issue the FPAAs was not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). Respondent's decision of how and when to work on these cases, based on an evaluation of his entire caseload and his workload priorities, was not a ministerial act. See Jean v. Commissioner, T.C. Memo. 2002-256.

Contrary to petitioner's claim that respondent had all the records sufficient to issue the FPAAs in 1987, the facts reveal that respondent's difficulty in obtaining accurate records during

the audits hindered the audit process. The record also establishes that respondent believed the partnerships were abusive tax shelters. Such delay in completing an examination because of the difficulties in obtaining documentation or because of the Commissioner's suspicion of fraud does not prove that the Commissioner was erroneous or dilatory in performing ministerial acts. Banat v. Commissioner, supra. Accordingly, issuing the FPAAs after 1987 was not a delay in performing a ministerial act.

Petitioner's second claim alleges that the audits of SGE for 1985 and 1986 were so replete with errors that the audits had to be completely redone. Petitioner asserts that four of respondent's agents were assigned to District Counsel in August 1990 to reaudit SGE for 1985 and 1986.

While the parties have stipulated that the four agents were assigned to District Counsel to assist in trial preparation of the Hoyt investor partnerships docketed Tax Court cases for the 1980 through 1986 taxable years, petitioner argues that the agents' work was not limited to trial preparation and appeared to be work traditionally done at the audit stage. Petitioner concludes that the existence of the "second" audit is "sufficient evidence that the first audit was replete with errors." Petitioner's conclusion is without merit. His argument fails to specify an error or delay in performing a ministerial act.

The entire record establishes that the four agents were assigned to District Counsel to assist in trial preparation relating to the Hoyt investor partnerships docketed Tax Court cases contesting the determinations made in the FPAAs. Petitioner has failed to show that respondent performed the functions of traditional audit work during trial preparation. In any event, no conclusion can be drawn from the work performed during the trial preparation that the 1985 and 1986 SGE audits were replete with errors because of respondent's being erroneous or dilatory in performing any ministerial act.

Since we have rejected both of petitioner's claims described above, finding that he failed to establish any error or delay by respondent in performing a ministerial act, we hold that respondent's failure to abate interest from December 17, 1987, until August 31, 1990, was not an abuse of discretion.

D. Whether Respondent's Refusal To Abate Interest From October 17, 1989, to December 31, 1998, Was an Abuse of Discretion

Petitioner contends that interest should be abated from October 17, 1989, until December 31, 1998, because respondent's failure to remove Jay Hoyt as the TMP of SGE after he was under a criminal tax investigation was an error in performing a ministerial act. Petitioner argues that Jay Hoyt's removal as TMP was required by the interrelationship of section 6231(c), section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed.

Reg. 6793 (Mar. 5, 1987), and section 301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin. Regs.

Our understanding of petitioner's argument is based on the following progression: (1) Pursuant to section 6231(c)(2), the Secretary is granted discretion by Congress to prescribe regulations concerning the special enforcement areas enumerated in section 6231(c)(1); (2) this discretion allows the Secretary to promulgate regulations to determine when treating items as partnership items will interfere with the effective and efficient enforcement of the internal revenue laws; (3) once such a determination is made by the Secretary, it is mandatory that a partner's partnership items be treated as nonpartnership items, sec. 6231(c)(2); (4) by regulation, the Secretary has determined that "The treatment of items as partnership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws", sec. 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra; (5) the regulation requires that notice be sent to the partner that his partnership items will be treated as nonpartnership items, id.; and (6) therefore, at the initiation of a criminal investigation of a TMP, it is mandatory that (a) the partner's partnership items become nonpartnership items, (b) the partner be sent notice, and (c) the partner be removed as TMP

pursuant to section 301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin. Regs.

While this Court and Court of Appeals for the Ninth Circuit have interpreted the interaction of section 6231(c) and section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, in Phillips v. Commissioner, 114 T.C. 115 (2000), affd. 272 F.3d 1172 (9th Cir. 2001), petitioner contends that his argument is distinguishable, and, therefore, Phillips does not control. The taxpayer in Phillips argued that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, was invalid and/or that the Commissioner abused his discretion by not issuing the notice. However, while acknowledging that the statute and regulation were held valid in Phillips, petitioner argues that the regulation contains language requiring the Commissioner to send notice at the commencement of a criminal investigation. He asserts that the Commissioner has no discretion in sending the notice, and failure to do so is an error in performing a ministerial act. He further attempts to distinguish his case from Phillips by asserting that abuse of discretion concerning the regulation is not an issue in the instant case.

In sum, petitioner asserts that the language of section 6231(c) and section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, taken together, required respondent to notify Jay Hoyt that his partnership items would be treated as

nonpartnership items at the commencement of a criminal investigation against him. Petitioner further asserts that since respondent could exercise no judgment or discretion in issuing the notice once the criminal investigation of Jay Hoyt began, the procedure in the regulation requiring notification is a ministerial act. Accordingly, he concludes that respondent's failure to send the required notification to Jay Hoyt was an error in performing a ministerial act that contributed to the accrual of interest.

Petitioner asserts that had respondent notified Jay Hoyt on October 17, 1989, the date of the first criminal investigation of Jay Hoyt after the first contact by respondent relating to the audit of SGE,[10] petitioner would have become aware of Jay Hoyt's fraud and could have made informed decisions about the SGE deductions and credits he claimed. Further, petitioner claims that respondent's failure to send Jay Hoyt the notification concealed Jay Hoyt's fraud until December 31, 1998, the date petitioner alleges that investors had sufficient information concerning the fraud. On the basis of these claims, petitioner requested that respondent abate interest from October 17, 1987, until December 31, 1998. He contends that respondent's failure to abate interest for this period was an abuse of discretion.

---

[10] Respondent's first contact with petitioner for purposes of sec. 6404(e) was Dec. 17, 1987. See supra note 9.

Contrary to petitioner's assertion that <u>Phillips</u> is distinguishable from the instant case, we find that <u>Phillips</u> is controlling in all pertinent respects.

Petitioner attempts to limit <u>Phillips</u> to a mere determination that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., <u>supra</u>, was a valid regulation. However, this Court in <u>Phillips v. Commissioner</u>, <u>supra</u> at 129, went well beyond that sole determination, stating:

> Pursuant to the provisions of section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., <u>supra</u>, the commencement of a criminal tax investigation of a partner in a TEFRA partnership <u>does not</u> necessarily or immediately interfere with the effective and efficient enforcement of the internal revenue laws and require the treatment of partnership items as nonpartnership items in every situation.  [Emphasis added.]

From the above language in <u>Phillips</u>, it is clear that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., <u>supra</u>, does not require the Commissioner to treat partnership items as nonpartnership items at the commencement of every criminal tax investigation of a partner.  Accordingly, the Commissioner has discretion to determine in which instances a criminal investigation interferes with the effective and efficient enforcement of the internal revenue laws.

In affirming this Court in <u>Phillips</u>, the Court of Appeals for the Ninth Circuit addressed the principal issue of whether a criminal tax investigation of a TMP "does, or must, end the TMP's power to act for a partnership."  <u>Phillips v. Commissioner</u>, 272

F.3d at 1173. The Court of Appeals held that pursuant to section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, a criminal tax investigation of a TMP does not impose an obligation on the Commissioner to treat partnership items as nonpartnership items. Id. at 1176. Further, the Court of Appeals held that the regulation in question "vests discretion in the Commissioner to notify a partner that he or she is under criminal investigation" and that "Until such notice is given, partnership items remain partnership items." Id. (emphasis added.)

In Phillips, the Tax Court and the Court of Appeals both held that section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., supra, is not a mandatory regulation requiring the Commissioner to act in every instance of a criminal tax investigation, as petitioner asserts. To the contrary, the regulation at issue vests discretion in the Commissioner to determine if and when to notify a partner that he or she is under criminal investigation. Phillips v. Commissioner, 114 T.C. at 129, 272 F.3d at 1176.

In the instant case, as in Phillips, respondent did not provide Jay Hoyt with notice that he was under criminal investigation. Contrary to petitioner's argument, respondent clearly had no obligation to notify Jay Hoyt of such activity. Because the act of notifying a partner about a criminal investigation pursuant to section 301.6231(c)-5T, Temporary

Proced. & Admin. Regs., <u>supra</u>, involves the exercise of the Commissioner's discretion and is not a mandatory procedure, the act of notification is not a ministerial act. See <u>Camerato v. Commissioner</u>, T.C. Memo. 2002-28 (defining ministerial act as a nondiscretionary procedural act); sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., <u>supra</u> (same). Therefore, respondent's failure to send Jay Hoyt notice of the criminal investigation was not an error in performing a ministerial act.

Because there was no error in performing a ministerial act, we hold that respondent's failure to abate interest from October 17, 1987, until December 31, 1998, was not an abuse of discretion.

E. <u>Petitioner's Claims That Respondent's Denial of Interest Abatement Was an Abuse of Discretion</u>

Petitioner sets forth various assertions that respondent failed to (1) provide discoverable documents, (2) adequately investigate his interest abatement claim, and (3) provide a sufficient explanation for denying the claim. Petitioner makes these arguments in an attempt to establish that respondent's decision not to abate interest was an abuse of discretion.

Because we have held that petitioner failed to establish an error or delay by an employee of the IRS in performing a ministerial act, we reject petitioner's arguments that the

interest abatement denial was an abuse of respondent's discretion.  See <u>Banat v. Commissioner</u>, T.C. Memo. 2000-141.

On the basis of the conclusions herein, respondent's motion for judgment on the pleadings is deemed moot.

To reflect the foregoing,

<u>An order denying respondent's motion, as supplemented, will be issued, and decision will be entered for respondent</u>.