T.C. Memo. 1996-458


UNITED STATES TAX COURT


OCEANIC LEASING, DOUGLAS F. SPAULDING, TAX MATTERS
PARTNER, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket No. 4219-93.                    Filed October 10, 1996.


<u>George Mac Vogelei</u> and <u>Phillip J. Terry</u>, for petitioner and
for Arthur Willner, a moving party.

<u>Christian A. Speck</u>, for respondent.


MEMORANDUM OPINION

COHEN, <u>Chief Judge</u>:  Following settlement with the
participating parties to this proceeding, respondent filed a
Motion for Entry of Decision pursuant to Rule 248(b).  Before
acting on respondent's motion, we here decide the motion by

Arthur Willner (Willner) to dismiss for lack of jurisdiction as to him, based on Willner's contention that he is not a partner in the partnership known as Oceanic Leasing that is the subject of this proceeding, and the motion by Willner requesting leave to file a notice of election to participate. Willner concedes that we have jurisdiction over the partnership items of Oceanic Leasing, even though that entity was a sham and not a bona fide partnership. He contends, however, that the partnership losses claimed by him on his individual income tax return for 1986, under the names Oceanic Leasing VI and Oceanic Leasing XXXV and under the single Federal identification number of Oceanic Leasing, related to different partnerships. Use of the term "partnership" as singular or plural in this opinion is for convenience and does not have any legal significance with respect to the separateness or validity of any entity mentioned. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Factual Background

### Hardin's Oceanic Leasing

C. Robert Hardin (Hardin) conducted a tax return preparation business in San Francisco, California, known as "The Tax Company". In 1985, Hardin commenced solicitation of clients to invest in partnerships engaged in equipment leasing transactions.

Hardin executed or caused to be executed various agreements identifying partnerships by the name "Oceanic Leasing", followed by Roman numerals, such as "Oceanic Leasing IV", "Oceanic Leasing VI", and "Oceanic Leasing XXXV". The agreements named Hardin and one or more other individuals as partners. In most cases, the capital contribution of Hardin shown in the partnership agreement was $1.00, while contributions to be made by other partners were typically in the thousands of dollars. As Hardin secured additional investors, he used the funds of those investors to make payments to earlier investors, thus operating the activity as a so-called "Ponzi" scheme. In this regard, he created or caused to be created various fictitious equipment leases, fabricating or forging the identities of various businesses.

In or about October 1987, Hardin prepared and caused to be filed a Form 1065, U.S. Partnership Return of Income, in the name of Oceanic Leasing for 1986. The Form 1065 showed the address of Oceanic Leasing as 3020 Bridgeway, Sausalito, California 94965 (the Sausalito address), and its employer identification number (EIN) as 94-2870681. The return reported a loss of $454,383, allegedly arising out of equipment leasing transactions. The Form 1065 attached copies of 21 Schedules K-1 for various investors, reporting alleged distributable shares of ordinary loss and tax credits. The persons shown as partners on the Schedules K-1 attached to the Form 1065 were only a few of the

scores of persons who had executed partnership agreements with Hardin for equipment leasing partnerships operating under the name Oceanic Leasing followed by a Roman numeral. Willner was not one of the persons shown on the Schedules K-1 attached to the Form 1065 filed by Hardin.

In 1990, a class action suit was filed in the Superior Court of the State of California for the County of San Francisco by an investor in the Hardin entities. The Superior Court appointed a receiver to take over the operations of Oceanic Leasing and related Hardin entities. In findings of fact filed April 15, 1991, in the Superior Court Action, the Superior Court found, among other things:

> 2. The receiver and her accountants (employed pursuant to the Court's Order Authorizing Receiver to Employ Accountants, entered August 15, 1990), completed an extensive review of the available books and records of Oceanic and Tax Company, and have identified a total of about 500 different entity names used in connection with defendants' operations, including about 100 purported Oceanic Leasing entities and about 400 purported Aerocapital entities.
>
> 3. Although it appears from the business records that Oceanic Leasing and Aerocapital entities would typically be set up as purported general partnerships, it appears that (1) virtually all of the capital contributed to the entities may have been pooled in joint bank accounts; (2) no separate books of accounts appear to have been kept for the different entities; (3) in most cases the entities may not have acquired specific identifiable assets; and (4) income and expenses may have been consolidated without regard to the entity's name or its nominal activity. [Price v. Hardin, No. 921799.]

The Superior Court authorized the receiver to pool all entities and transactions for purposes of the receivership.

On April 28, 1994, Hardin was indicted in the U.S. District Court for the Northern District of California for various crimes arising out of his investment transactions, including Oceanic Leasing transactions.  Criminal proceedings against him were resolved in 1995.

Willner's Oceanic Leasing

At the end of 1985, Willner was introduced to Hardin by Linda Calef (Calef).  Willner, his mother, his brother, and Hardin entered into an agreement for a partnership to be known as Oceanic Leasing VI.  He claims, but Calef denies, that Calef was also a member of a partnership known as Oceanic Leasing VI. Willner received a Schedule K-1 for 1985 reporting his alleged share of losses for Oceanic Leasing VI.  Willner did not produce to respondent or at trial a copy of any written agreement relating to this partnership.  It appears from other correspondence that any such agreement was signed after January 10, 1986.

Willner executed a document dated December 15, 1986, purporting to be a partnership agreement between Hardin, Calef, Arthur and Susan Willner, and Anne Latta (Latta), for a partnership known as Oceanic Leasing XXXV.  The Sausalito address was shown as the principal place of business of the partnership.

According to the agreement, Hardin, Calef, the Willners, and Latta each were to contribute $75,000 to the partnership. In a "First Amendment to Partnership Agreement" dated December 15, 1987, the capital contributions of the partners were increased to $150,000. The contributions called for by the documents were never made.

Willner received 1986 Schedules K-1 from Hardin. One Schedule K-1 showed Oceanic Leasing VI at the Sausalito address. The form reported his distributive share of loss as $1,617. Willner also received a Schedule K-1 that showed Oceanic Leasing XXXV at the Sausalito address and set forth his distributive share of loss as $33,889. Both of the Schedules K-1 received by Willner used the same EIN for Oceanic Leasing, to wit, 94-2870681. When he received the Schedules K-1, Willner called Hardin and asked about use of the same employer identification numbers for Oceanic Leasing VI and Oceanic Leasing XXXV; he was told that such use was not an error.

Willner prepared a Form 1040, U.S. Individual Income Tax Return, for himself and his wife for 1986. On that Form 1040, he claimed losses from Oceanic Leasing VI and Oceanic Leasing XXXV in the amounts shown on the Schedules K-1 received by him, showing the Oceanic Leasing EIN for each. He also attached to his Form 1040 a Form 3468, Computation of Investment Credit,

claiming $12,313 attributable to Oceanic Leasing XXXV, using the same EIN.

Latta, who, along with Willner, executed the agreement referring to Oceanic Leasing XXXV, claimed Oceanic Leasing losses using EIN 94-2870681 on her individual return for 1986 without reference to "XXXV". The Form 1065 filed by Hardin attached a Schedule K-1 for Latta.

Willner gave Hardin payments totaling approximately $79,000 from 1985 through 1989. Those payments included a check dated July 26, 1988, in the amount of $10,000 payable to Oceanic Leasing, without any Roman numeral designation. Willner received Oceanic Leasing checks in the amounts set forth below and bearing the indicated notations in the lower left corner:

| Date | Amount | Notation |
|------|--------|----------|
| July 22, 1988 | $20,701.42 | Ocean. 35 |
| Oct. 31, 1988 | 8,505.85 | OL 35 |
| Feb.6, 1989 | 11,462,57 | OL 35 |
| May 11, 1989 | 11,452.57 | #35 |
| July 24, 1989 | 1,215.00 | #006 |
| July 27, 1989 | 5,600.00 | #035 |
| Nov. 7, 1989 | 5,600.00 | 035 |
| Nov. 13, 1989 | 5,597.47 | None |
| Feb. 2, 1990 | 11,452.47 | #035 |
| Apr. 25, 1990 | 8,195.97 | #035 |

All of the checks bore the name and Sausalito address of Oceanic Leasing and were written on the same bank account.

Willner believed that Hardin was completely in control of running the business of the partnerships and acquiesced in Hardin's conduct with respect to the partnerships.

In or after 1990, Willner, along with others, began to suspect problems with respect to Hardin's activities. Willner was aware of and believed that he was a beneficiary of the Superior Court class action commenced against Hardin. During an Internal Revenue Service (IRS) audit of his 1990 tax return, Willner claimed and was allowed a theft loss from his involvement with Hardin, which loss was applied towards tax due and owing for earlier years.

Respondent's Oceanic Leasing

In 1988, the IRS commenced an audit of Janet Grove (Grove), who had claimed on her 1986 individual income tax return partnership losses under the name Oceanic Leasing XXXIII, with the Sausalito address and EIN 94-2870681. The agent examining Grove's return thereafter contacted Hardin and commenced an audit of the Oceanic Leasing Form 1065 for 1986. The agent discovered that Grove and others had claimed partnership losses based on Schedules K-1 received from Hardin but not attached to the Form 1065 filed by Hardin for Oceanic Leasing. Hardin admitted to the revenue agent that the partnership in which Grove was involved was a "hoax". Hardin continued to supply information to the revenue agent. Hardin alternatively referred to Oceanic Leasing as a single entity, sometimes using the term "Big Daddy", and referred to separate Oceanic Leasing partnerships by number. He advised the revenue agent that each partnership had a separate

agreement, that there was "no overriding partnership agreement for Oceanic Leasing," and that Oceanic Leasing was a collection of separate partnerships.

The revenue agent determined that the Schedules K-l attached to the Form 1065 did not reconcile with the losses reported on the return or equal 100-percent interests in the partnership. The agent began identifying various individuals who had claimed Oceanic Leasing partnership losses in order to arrive at interests totaling 100 percent. The revenue agent solicited Hardin's appointment as tax matters partner and secured from him an agreement to extend the period of limitations on adjustments arising out of the 1986 Form 1065. She believed that she was operating under the partnership provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648, codified at sections 6221-6232.

The Notice of Final Partnership Administrative Adjustment (FPAA) that is the subject of this proceeding was mailed December 31, 1992, to Douglas F. Spaulding, as tax matters partner. The partnership was identified as Oceanic Leasing at the Sausalito address with EIN 94-2870681. All of the losses and credits claimed on the 1986 Form 1065 were disallowed. At the time of the notice, the revenue agent had identified at least 29 persons who had claimed losses from Oceanic Leasing with the same identification number as the partnership Form 1065 that she was

auditing. Among those identified by the revenue agent was Willner. A copy of the FPAA was sent to Willner.

In the petition filed March 1, 1993, the adjustments in the FPAA were challenged on the following grounds:

> 6. The facts on which the Petitioner relies as the basis of his case are as follows:
>
> A. Not all income and expenses shown on the partnership's tax return are the result of fictitious, sham transactions;
>
> B. Some of the business activity actually occurred; and
>
> C. Property purchased by the partnership was: (a) depreciable; (b) had a useful life of at least 3 years; (c) was tangible personal property; and (d) was placed in service during the taxable year in a trade or business.
>
> 7. Petitioner further alleges that the statutory period for making an assessment for the taxable year 1986 has expired.

Trial of this case commenced in San Francisco, California, in September 1994. Calef appeared by counsel and moved for dismissal of the case for lack of jurisdiction as to her, claiming that she was not a partner in the partnership that was a subject of this proceeding. The trial was thereafter continued several times for purposes of settlement discussions among various interested partners. In July 1995, Calef's motion to dismiss was withdrawn as a result of a settlement reached between herself and respondent. On August 7, 1995, respondent filed a Motion for Entry of Decision pursuant to Rule 248(b). The

settlement involves allowing investors to deduct theft losses incurred as a result of their dealings with Hardin. Willner receives no benefit from the settlement. On October 4, 1995, Willner filed a Motion for Leave to File Notice of Election to Participate in order to contend that he was not a partner in the partnership that is the subject of this proceeding, and on January 11, 1996, he filed his jurisdictional motion.

## Discussion

"[M]ushrooming administrative problems experienced by the Internal Revenue Service in auditing returns of partnerships, particularly tax shelter partnerships with numerous partners", led to the enactment of the TEFRA partnership proceedings in 1982. Boyd v. Commissioner, 101 T.C. 365, 368 (1993). The purpose of the new procedures was to provide a method for uniformly adjusting items of partnership income, loss, deduction, or credit, without the necessity of separate proceedings for each partner. Id. at 369; Maxwell v. Commissioner, 87 T.C. 783, 787 (1986). Willner here seeks to avoid the normal consequences of our determination in this action, which would be an assessment against him based on disallowance of all partnership losses claimed by him on his 1986 return under the name and EIN of Oceanic Leasing. See secs. 6225, 6229(d) and (e), 6231(a)(6); Sente Inv. Club Partnership v. Commissioner, 95 T.C. 243, 248-249

(1990); cf. <u>N.C.F. Energy Partners v. Commissioner</u>, 89 T.C. 741 (1987).

That a partnership is a sham does not preclude applicability of the provisions of TEFRA.  Section 6233(a) provides:

> (a) General Rule.--If a partnership return is filed by an entity for a taxable year but it is determined that the entity is not a partnership for such year, then, to the extent provided in regulations, the provisions of this subchapter are hereby extended in respect of such year to such entity and its items and to persons holding an interest in such entity.

See also sec. 301.6233-1T (a), (c)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6795 (Mar. 5, 1987).

Willner does not deny that Hardin's activities were fraudulent.  He does not deny that we have jurisdiction with respect to the partnership that is the subject of these proceedings, and he has stipulated that the FPAA was timely. Willner contends that section 6233 does not apply to him because he was not a partner in the entity that filed a partnership return for 1986.  He relies on the 21 Schedules K-1 attached to the Form 1065, which did not include a Schedule K-1 for him.  He seeks relief on the basis that the Schedules K-1 on which he relied in claiming losses were not attached to any partnership return.  He defines the issue as:  "Were Arthur and Susan Willner partners in the entity that filed a partnership return for 1986?" Using the words of the statute, we would define the issue as

whether Arthur and Susan Willner were "persons holding an interest in such entity."

The evidence supports a finding that Willner was a person holding an interest in the entity that is the subject of this proceeding. He claimed tax benefits on the assumption that a return was filed for the partnerships in which he invested, bearing the single EIN 94-2870681; he received cash payments from a single bank account with respect to the partnerships in which he invested; he acquiesced in Hardin's total control of all entity business with knowledge that Hardin was handling as a unit what were identified as multiple partnerships; he regarded himself as the beneficiary of a class action that treated the superficially separate partnerships as a single entity; and he did not raise his claim in this action until he saw that the action would neither lead to a determination in favor of the partnership nor a settlement that would benefit him. The nexus between his claims of partnership losses and credit and the entity that is the subject of this proceeding exists.

By contrast, there is no evidence that separate partnerships known as Oceanic Leasing VI or Oceanic Leasing XXXV ever engaged in any activity other than the fraudulent leasing transactions engaged in by Hardin in the name of Oceanic Leasing. Willner did not comply with the terms of the agreements on which he relies.

Willner acquiesced in Hardin's fraudulent activities so long as they brought him tax benefits and cash distributions exceeding his contributions. See <u>Mishawaka Properties v. Commissioner</u>, 100 T.C. 353, 367 (1993) (where a partner has voluntarily permitted another partner's petition and apparent authority to exist, the "situation * * * should not redound to their own benefit and to respondent's detriment"). The procedural difficulties of TEFRA do not require us to reward him for investing in sham entities that did not file separate partnership returns for the years for which he claimed fictitious partnership losses.

Willner points out various inconsistent actions taken and errors made by respondent's revenue agent. Respondent makes various arguments based on speculation as to what "must have been" the arrangement between Hardin and various individual investors. Certain of those investors testified, and respondent presented documentary evidence concerning the tax treatment of other investors. We have not discussed in this opinion either the errors made by the revenue agent or the differences among other persons who invested in Hardin's Oceanic Leasing scheme. Nor have we discussed the complex and frequently changing positions of other investors who have appeared during the pendency of this proceeding. The only issue before us is whether Willner had an interest in the entity that is the subject of this

proceeding.  We hold that he did.  His Motion to Dismiss for Lack of Jurisdiction will be denied.

Willner's Motion for Leave to File Notice of Election to Participate was made solely for purposes of raising the jurisdictional issue and did not set forth any independent statements to show his preparedness to litigate the case on the merits or reasons why respondent's Motion for Entry of Decision should not be granted.  As stated in the Notes to the Amendments to the Rules of Practice and Procedure, adopted May 20, 1988, with respect to Rule 248(b), "any objecting partners would have to make a substantial showing in order for the Court to grant their motion [for leave to file a notice of election to participate]".  90 T.C. at 1376.  No such showing having been made, the Motion for Leave to File Notice of Election to Participate will be denied, and respondent's Motion for Entry of Decision will be granted.

<u>Appropriate orders will be issued, and a decision in accordance with respondent's motion will be entered</u>.