# United States Tax Court

T.C. Memo. 2025-39

CHIMNEY ROCK HOLDINGS, LLC, ORNSTEIN-SCHULER, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 31727-21.                          Filed May 1, 2025.

————

*Michael Todd Welty*, *Lyle B. Press*, *Macdonald A. Norman*, *Michael B. Coverstone*, *Daniel B. Wharton*, *Merima Mahmutbegovic*, *Andrew W. Steigleder*, and *Daniel A. Rosen*, for petitioner.

*Kirsten E. Brimer* and *Russell Scott Shieldes*, for respondent.

## MEMORANDUM OPINION

GOEKE, *Judge*: This is a conservation easement case. Pending before the Court are six "Motion[s] to Intervene" (Motions to Participate), one of which was filed on May 24, 2024, and five of which were filed on May 30, 2024. The facts described below are stated solely for the purpose of deciding the Motions to Participate and are not findings of fact for this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Considering the facts and law, we will deny the Motions to Participate.

**Served 05/01/25**

[*2]                                    *Background*

Chimney Rock Holdings, LLC (Chimney Rock),[1] claimed a deduction related to the donation of a conservation easement (and certain smaller deductions) on its tax return for the period ending December 31, 2017. Respondent determined that certain of the deductions should be disallowed and issued a Notice of Final Partnership Administrative Adjustment (FPAA) on August 26, 2021, to Ornstein-Schuler, LLC (OS), in its capacity as the tax matters partner (TMP) for Chimney Rock. As set forth in the FPAA, respondent also determined that a 75% civil fraud penalty pursuant to section 6663, a 40% gross valuation misstatement penalty pursuant to section 6662(h), and various alternative 20% penalties applied.[2] OS timely filed a Petition on November 23, 2021, in response to the FPAA. No motions to participate in the case pursuant to Rule 245(b) were filed. Rule 245(b) permits a partner to participate in a case "by filing a notice of election to participate . . . within 90 days from the date of service of the petition by the Clerk on the Commissioner."

In recent years, our Court has not been a stranger to conservation easement cases similar to this case. This case was consolidated with 33 similar cases involving the same counsel for OS. Because other cases docketed with this Court (not consolidated with this case) were closer to trial, the parties advised the Court that they were content to await the outcome of those cases before moving toward a trial in the 34 consolidated cases. As OS stated in a Status Report, "once various Divisions of the Court issue[] opinions in [other] cases, the parties will have a sense of the Tax Court's views on these types of cases" and might be able to settle the 34 consolidated cases. OS's statement was accurate; respondent largely prevailed in most cases that were tried, and the parties began to discuss a settlement of the 34 consolidated cases.

By letter to OS dated January 26, 2024, respondent offered a settlement that would resolve this case. Respondent proposed disallowance of the noncash charitable contribution deduction (the primary issue), disallowance of a smaller charitable contribution

---

[1] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Chimney Rock.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts and other figures are rounded.

[*3] deduction, allowance of two smaller "other deductions," a section 6662(h) penalty of only 10%, and concession of the remaining penalties. Similar terms were offered in other consolidated cases. On behalf of Chimney Rock, OS agreed with the proposed settlement of this case (and many other cases in which it was the TMP) by letter dated February 13, 2024.

On March 29, 2024, pursuant to Rule 248(b) respondent filed a Motion for Entry of Decision and lodged a Proposed Stipulated Decision reflecting the terms of the proposed settlement.[3] In accordance with Rule 248(b)(1), the Motion for Entry of Decision stated that OS "agrees to the entry of the proposed decision in this case, but does not certify that no party objects to the granting of Respondent's Motion for Entry of Decision."

On May 24, 2024, Daniel Hickey filed a Motion to Participate. On May 30, 2024, Natacha Bastian, Mark Eisenfeld, Robert Hotaling, Miami Anesthesia Services, LLC, and Fernando Munilla (including Mr. Hickey, Putative Participants) filed Motions to Participate. The six Putative Participants are represented by the same counsel, who are not counsel for OS. Putative Participants argued that they should be allowed to "intervene" in this case primarily because "Ornstein-Schuler Investments" is "the target of a federal grand jury investigation, has an unwaivable conflict of interest and therefore cannot continue to represent [Chimney Rock] in this case." The investigation allegedly pertained to conservation easement transactions such as the one at issue in this case. A Subpoena to Testify Before a Grand Jury was issued to a redacted person/entity in April 2021 and attached to the Motions to Participate. Putative Participants argued that "intervention" was proper pursuant to Rule 24 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.), titled "Intervention." They did not address the requirements for participation in a TEFRA case, nor did they discuss Rule 248, section 6226(c)(2), or other relevant Tax Court precedent. The Motions to

---

[3] By his own admission, respondent failed to fully comply with Rule 248(b)(2) by initially serving OS with a certificate of service that did not show the date that the Motion for Entry of Decision was filed with the Court. Respondent later served OS with a corrected certificate of service. However, OS requested that we wait 60 days from May 28, 2024, before entering the decision in this case to cure any error caused by respondent's unintentional omission of the filing date. *See* Rule 248(b)(4) (allowing a 60-day period from the date a motion for entry of decision is filed for any party to "file a motion for leave to file a notice of election to . . . participate"). Respondent did not object to OS's request, and we agreed to wait 60 days from May 28, 2024, before entering the decision. Accordingly, neither respondent nor OS disputes that the five Motions to Participate filed on May 30, 2024, are timely.

**[\*4]** Participate did not comply with Rule 248 regarding moving to participate in a TEFRA case.[4]

Putative Participants are indirect partners of Chimney Rock. Chimney Rock is owned by eight partners, some of which are entities affiliated with and/or owned by Matt Ornstein and Frank Schuler (who are the only two members of OS, which owns 0.01% of Chimney Rock).[5] One of the eight partners in Chimney Rock is Chimney Rock Group, LLC (InvestCo), which owns 91.3448867% of Chimney Rock. Five of the Putative Participants each own 0.9024460% of InvestCo. The sixth Putative Participant, Mr. Hotaling, owns 1.8048910% of InvestCo. Accordingly, the six Putative Participants combined own 6.32% of InvestCo and (through InvestCo) 5.77% of Chimney Rock.

OS and respondent filed responses to the Motions to Participate. OS argued that we should deny the Motions to Participate and enter the Proposed Stipulated Decision, resolving this case. Respondent took no firm position at the time, though he later argued that the Motions to Participate should be denied. We directed Putative Participants to, by July 15, 2024,

> file with the Court a supplement to their [Motions to Participate] and . . . tell us why they should be allowed to participate according to I.R.C. section 6226(c) and (d)(1)(A) and [T.C. Rules] 245(c) and 248(b)(4) including the tax consequences of the settlement on [Putative Participants] and other facts that demonstrate a substantial need to intervene as well as the [Putative Participants'] preparedness to litigate this case. The [Putative Participants] should also address *Oceanic Leasing v. Commissioner*, T.C. Memo. 1996-458.

We also afforded Putative Participants (along with OS and respondent) the opportunity to establish additional facts by setting an "evidentiary hearing" for September 19, 2024. We stated that the "the parties [could] present testimony and proposed exhibits" at the hearing.

---

[4] We will not rule against Putative Participants because of their failure to follow the procedures outlined in Rule 248, as we would deny their Motions to Participate even if they had followed those procedures.

[5] All ownership percentages stated in this Opinion are as of December 31, 2017.

**[\*5]**    On July 15, 2024, Putative Participants served a response on OS and respondent.[6] Putative Participants argued that "under 26 U.S.C. § 6226(c)(2) (2017) this Court must allow each [P]utative [Participant] to participate[] in this case." Putative Participants "object[ed] to having to demonstrate a" substantial showing to participate on grounds that: (1) the substantial showing standard is not found in relevant statutes and (2) tax liabilities resulting from the proposed settlement should be considered. Putative Participants also generally stated that they were "ready, willing, and able to litigate this case" and attempted to distinguish *Oceanic Leasing*.

We held the evidentiary hearing on September 19, 2024. Putative Participants called no witnesses, nor did respondent or OS. However, the three parties did stipulate various facts and documents. The Court asked Putative Participants what they hoped to achieve if they were allowed to participate. Putative Participants' counsel, Joseph DiRuzzo III, responded that Putative Participants hoped to gain a

> place [at] the table, try to negotiate, get access to the evidence and the discovery in the case, which will allow me to then provide a much better informed discussion with my clients regarding the relative strengths and weaknesses of the case, and then articulate that to the Government to try to obtain a better settlement. And if that is unsuccessful, then I'll have to go to my clients and talk about the pros and cons of proceeding forward.

Mr. DiRuzzo stated that Putative Participants did not want "to proverbially blow up the deal or blow up the offer between the Petitioner and the Government. . . . [If] the Government[] wants to continue to maintain the offer to the other partners, I don't have a dog in that fight." Mr. DiRuzzo claimed that Putative Participants "believe that . . . [OS] was not looking out for their best interest, and they want an opportunity to protect and vindicate their individual best interests as they see fit."

The Court inquired whether it was feasible for the parties to reach an agreement that would settle this case for most (direct and indirect) partners in Chimney Rock but allow Putative Participants to continue the litigation. OS stated that respondent could theoretically enter into closing agreements with all partners other than Putative Participants.

---

[6] Putative Participants' response was not filed with the Court. Respondent attached a copy of the response to one of his later filings.

**[*6]** Predictably, respondent's counsel dismissed that possibility, stating that if the Motions to Participate were granted there would be no settlement and "we will try the entire case on the merits, and it won't just affect the [Putative Participants] or the TMP. It will affect all partners or all parties that have an interest in this matter."

Before the hearing concluded, Mr. DiRuzzo stated that "if there is any type of perceived requirement that my clients would have to come here to testify as to their willingness to take this case to the proverbial finish line . . . I would submit that any testimony from my client would necessarily implicate work product and attorney-client" privilege. The following exchange then occurred:

> THE COURT: So you want me to accept on faith, based on your representation, that your clients would embrace the responsibility of being in charge of what happens in the future in this litigation?

> MR. DIRUZZO: I would just say that they will be like every other litigant who would have to, when they go to court, have to make the decision about what they want to do with the case, what they want to settle with.

> THE COURT: Okay. Well, I'm okay with that. But here's a, kind of, a secondary point that doesn't really relate to your concern. At this point, I don't perceive your concerns as being a pivotal issue. What I perceive is, should I allow your clients to take control of ultimately the decision whether there's going to be litigation or not? Because given the Respondent's position, as stated on the record, that's if I was to allow your clients to [participate], and your clients would not be happy with the settlement, or the settlement would be withdrawn because Respondent is, like, one size fits all kind of approach, which I don't think is unreasonable. . . . Then, in effect, I will be substituting your clients for the [TMP] . . . .

> So that's an issue of whether that is—whether I'm obligated to do that, or whether that's even possible under the case law. That's an issue you should address in [post-hearing briefs], because that's an aspect of what you said that I don't think is quite the concern you have, but it's a concern I have about the outcome here.

**[\*7]** The Court ordered the three parties to file briefs regarding their positions.

Respondent and OS filed well-written briefs with proposed findings of fact and discussion of relevant authority. Putative Participants' brief was only about 1.5 pages long, and they did not cite or discuss Rule 248. Putative Participants made two related arguments. First, they argued that section 6226(c)(2) "requires this Court to 'allow each [partner] to participate in the action.' There is no threshold to participate (monetary, percentage or otherwise). Any attempt to improve upon the statutory text is for Congress and Congress alone to do; not this Court . . . ." Second, they argued that

> the Government . . . is attempting to hold hostage the taxpayers and the Court to any settlement and resolution. In any event, the statutory scheme allows [Putative Participants] to participate in this case, and how the Government wants to exercise its discretion is not a consideration for this Court to take into account when allowing a taxpayer to participate under Section 6226.

We stated at the hearing that we would consider requests for additional briefing, but no party requested it.

## *Discussion*

We will begin by addressing Putative Participants' arguments regarding section 6226(c)(2). Section 6226(c) provides:

> Sec. 6226(c). Partners treated as parties.—If an action is brought under subsection (a) or (b) with respect to a partnership for any partnership taxable year—
> (1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and
> (2) the court having jurisdiction of such action shall allow each such person to participate in the action.

The term "partner" in section 6226 includes indirect partners. § 6231(a)(2).

Putative Participants are correct that section 6226(c)(2) gives them the right to participate in this case. Putative Participants were

**[\*8]** afforded that right. Pursuant to Rule 245(b), Putative Participants had "90 days from the date of service of the petition by the Clerk on the Commissioner" to file a notice of election to participate in this case. Even after that 90-day period, Putative Participants could have filed a motion for leave to file "a notice of election to participate out of time upon a showing of sufficient cause." *See* Rule 245(c). Putative Participants had about two years to file such a motion but did not seek to participate until a settlement was proposed. Putative Participants now claim that they want their interests adequately represented but have given no explanation for their failure to participate (or seek to participate) in this case at an earlier date. Instead, Putative Participants waited until the last minute before a decision was entered, then sought to participate in this case, claiming an absolute right to do so pursuant to section 6226(c)(2).

Courts have recognized that even where a statute gives one a right to participate or intervene[7] in a case, there are generally temporal limits on such rights. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994) (evaluating timeliness when considering intervention as of right pursuant to 42 U.S.C. § 9613(i)); *EEOC v. Taylor Elec. Co.*, 155 F.R.D. 180, 181 (N.D. Ill. 1994) (considering whether a motion to intervene was timely despite its being filed by a person with "an absolute right to intervene in" case pursuant to 42 U.S.C. § 2000e-5(f)(1)). Indeed, Fed. R. Civ. P. 24(a) states:

> (a) Intervention of Right. *On timely motion*, the court must permit anyone to intervene who:
> (1) *is given an unconditional right to intervene by a federal statute*; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(Emphasis added.) The U.S. Court of Appeals for the Sixth Circuit has explained that

---

[7] In this case, there is little difference between intervention and participation. We believe precedent pertaining to intervention is broadly applicable with respect to the issue regarding the text of section 6226(c)(2).

**[*9]**     [f]or intervention as of right to be proper, the application for intervention must be timely. See Fed. R. Civ. P. 24(a) . . . .

. . . .

. . . [T]he purpose of the timeliness inquiry is to prevent "a tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983), *cert. denied sub nom. Brookins v. South Bend Community Sch. Corp.*, 466 U.S. 926, 80 L. Ed. 2d 181, 104 S. Ct. 1707 (1984). For this reason, a motion to intervene filed during the final stages of a proceeding is not favorably viewed.

*United States v. BASF-Inmont Corp.*, 52 F.3d 326, 1995 U.S. App. LEXIS 9158, at *5–8 (6th Cir. 1995) (unpublished table decision) (footnote omitted).

Recognizing that there is a temporal limit on the right to participate pursuant to section 6226(c)(2), the U.S. Court of Federal Claims has set a time period of "45 days after the date of the Notice of Assignment" for a partner to "participate in [a TEFRA case] by filing a notice of election to participate with the court." U.S. Ct. Fed. Claims App. F, R. 4(b). That court has also adopted a rule similar to Rule 248(b) regarding an opportunity to participate when a settlement has been proposed. U.S. Ct. Fed. Claims App. F, R. 7(b) (noting that the court may deny a partner's "motion for leave to file a notice of election . . . to participate").

Our Rules regarding participation are similar to those of the U.S. Court of Federal Claims. As stated in the Notes to the Amendments to the (Tax Court) Rules of Practice and Procedure, adopted May 20, 1988, 90 T.C. at 1375–76:

Rule 248(b) sets forth a procedure designed to (a) bring a partnership action to a conclusion or, alternatively, (b) require nonparticipating partners who wish to do so to request the Court's consent to their continuing the partnership litigation as participating partners. The procedure is operative only after the expiration of the time within which a party may file a notice of election . . . to participate under Rule 245(a) or (b), respectively. . . .

**[*10]** If the procedure set forth in paragraph (b) is applicable, then the Commissioner shall submit to the Court a proposed form of decision, along with the motion for entry of decision. . . . Within 3 days after filing the motion, the Commissioner shall serve on the tax matters partner a certificate showing the date on which the motion was filed with the Court. The tax matters partner shall in turn serve copies of the proposed decision, the Commissioner's motion, the Commissioner's certificate, and Rule 248 on all other parties to the action other than the participating partners. If any such party objects to the granting of the Commissioner's motion, then that party must, within a prescribed period of time, file a motion for leave to file a notice of election to intervene or to participate, as appropriate. (A separate notice of election to intervene or a separate notice of election to participate, as appropriate, must accompany the motion for leave to file.) If no such motion is filed with the Court within the prescribed period, or if the Court should deny such motion, then the Court may enter the proposed decision as its decision, thereby bringing the partnership action to a conclusion. See Rule 251, *infra.* On the other hand, if such a motion is filed and granted, then the partnership action will continue with the objecting partners as participating partners. *It is contemplated, however, that any objecting partners would have to make a substantial showing in order for the Court to grant their motion.*

(Emphasis added.) Quoting this Note, we later ruled that a substantial showing was required before we would grant a motion for leave to file a notice of election to participate pursuant to Rule 248(b). *Oceanic Leasing v. Commissioner*, T.C. Memo. 1996-458, 1996 Tax Ct. Memo LEXIS 477. In *Oceanic Leasing* we denied the motion for leave to file a notice of election to participate at issue, noting that it "did not set forth any independent statements to show [the partner's] preparedness to litigate the case on the merits or reasons why [the Commissioner's] Motion for Entry of Decision should not be granted." *Id.* at *17–18.

The requirement that a substantial showing be made before the Court permits a partner to first participate at the final stage of a case is sound. If not for such requirement, any direct or indirect partner could swoop in at the last minute and disrupt proposed settlements of cases involving TEFRA entities, which often involve numerous partners' and

**[\*11]** the participating parties' addressing complex and time-consuming issues.[8] Again, Putative Participants could have participated in this case by complying with the procedures stated in T.C. Rule 245(b), but they did not do so. We find that section 6226(c)(2) does not give Putative Participants the absolute right to participate at this stage of the case. Rather, Putative Participants must make a substantial showing as to why they should be permitted to participate, which they have not done.

First, Putative Participants have essentially acknowledged that they have not made a substantial showing as to why they should be permitted to participate. Their post-hearing brief pertained almost entirely to section 6226(c)(2), which we have already discussed. To the extent Putative Participants' claim that "the Government . . . is attempting to hold hostage the taxpayers and the Court to any settlement and resolution" constitutes an argument as to why they should be permitted to participate, we reject that argument. It is entirely practical for respondent to refuse to enter closing agreements with most partners that would still necessitate respondent's trying the case (with the result binding on only a small minority of partners). This would deprive respondent of one of the primary benefits of parties' settling cases: to avoid expending resources trying a case. Respondent is not holding anyone hostage; he is simply acting rationally and in accordance with the purpose of TEFRA. *See supra* note 8.

Second, in their July 15 response, Putative Participants argued that tax liabilities resulting from the proposed settlement should be considered when determining whether they had made a substantial showing. We acknowledge that Putative Participants will likely be faced with substantial liabilities resulting from the proposed settlement. However, such liabilities are presumably in proportion to Putative Participants' ownership interests in Chimney Rock; Putative Participants have not suggested otherwise, and Schedules K–1, Partner's Share of Income, Deductions, Credits, etc., reflect deductions assigned to partners based on ownership interests in Chimney Rock. Putative Participants owned only 6.32% of InvestCo and (through

---

[8] The purpose of TEFRA was to provide a method for uniformly and efficiently adjusting and resolving items of partnership income, loss, deduction, or credit without the necessity of separate proceedings for each partner. *See Boyd v. Commissioner*, 101 T.C. 365, 369 (1993); *Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986). Allowing any partner, for any reason, to participate in a TEFRA case after a TMP and the Commissioner have proposed a settlement would not promote the purpose of TEFRA. Rather, it would result in inefficiencies, as settlements would always be at risk of disruption at the last minute.

**[\*12]** InvestCo) 5.77% of Chimney Rock. We are thus faced with the likelihood that Putative Participants, owning a small minority of Chimney Rock and facing an accordingly small portion of the total liabilities, would disrupt a proposed settlement that owners of the other 94% have shown no disagreement with. In doing so, Putative Participants would force the other owners to confront not only the hazards of litigation, but also possibly costs accompanying such litigation (discussed *infra*). Considering their small ownership interests, in conjunction with other issues discussed in this Opinion, it would be imprudent to allow Putative Participants to potentially dictate the course of this case. Putative Participants chose to enter a transaction involving entities that they did not control. Then, when they had the opportunity to participate in this case pursuant to Rule 245(b), they demurred. They have not shown that they made any effort to informally participate by requesting documents or information from OS at any time. Putative Participants have no one to blame but themselves for their inability to participate at this stage of the case.

Third, Putative Participants have made no showing that any investigation regarding Messrs. Ornstein and Schuler, or any related entity, has affected OS's ability to act in the best interests of Chimney Rock's partners. The existence of such an investigation does not automatically disqualify a TMP from negotiating or entering into agreements with the Internal Revenue Service. *Madison Recycling Assocs. v. Commissioner*, 295 F.3d 280, 288 (2d Cir. 2002) (citing *Phillips v. Commissioner*, 114 T.C. 115, 132 (2000), *aff'd*, 272 F.3d 1172 (9th Cir. 2002)), *aff'g* T.C. Memo. 2001-85. Aside from casting general aspersions, Putative Participants have not shown that there is any reason to believe the tentative settlement OS reached with respondent was influenced by an investigation. Certainly, the owners of 94% of Chimney Rock do not seem to think so, as they have not joined Putative Participants in seeking to participate.

Fourth, Putative Participants have not alleged that the terms of the settlement are unreasonable or made any other argument regarding the substantive facts of the case. Indeed, Mr. DiRuzzo has indicated that Putative Participants are largely unfamiliar with those facts, stating that Putative Participants primarily wanted an opportunity to review evidence and negotiate with respondent directly. While limited documents have been filed in this case and there has obviously been no trial, our review of the record and knowledge of the general law/precedent applicable in similar cases give us no reason to believe that the proposed settlement is a poor one for Chimney Rock's partners.

**[\*13]** In fact, it seems to be a rather *good* deal for the partners, certainly in comparison with how other partnerships have fared in recent conservation easement cases. *See, e.g., Seabrook Prop., LLC v. Commissioner*, T.C. Memo. 2025-6; *Jackson Crossroads, LLC v. Commissioner*, T.C. Memo. 2024-111; *JL Mins., LLC v. Commissioner*, T.C. Memo. 2024-93; *Buckelew Farm, LLC v. Commissioner*, T.C. Memo. 2024-52; *Savannah Shoals, LLC v. Commissioner*, T.C. Memo. 2024-35. This is not to mention that the proposed settlement avoids the cost of continuing this litigation and potentially trying the case.

Fifth, Putative Participants have stated that they are "ready, willing, and able to litigate this case" if necessary. Beyond this general statement, there has been little showing that Putative Participants are actually prepared to do so, and they appear to be more interested in negotiating with respondent (who has clearly stated that the proposed settlement terms will not change and/or that the settlement offer will be revoked if not accepted). Furthermore, Putative Participants have made no showing that they alone could or would shoulder the potential costs of trying the case. Thus, the partners owning 94% of Chimney Rock would face the possibility of being dragged into a trial they apparently do not want, while also potentially paying additional legal fees as a result. Under the circumstances, we must consider the possible financial implications to the partners owning 94% of Chimney Rock.[9]

Sixth, Putative Participants argued in the Motions to Participate that OS failed to provide "all members of Chimney Rock [with] notice of the proposed settlement." Emails sent by OS to Chimney Rock partners were attached to the Motions to Participate. In the emails, OS referred to Chimney Rock's "2014 tax return," which we find to be an obvious and minor typo. To the extent some partners did not receive the emails, we speculate that it is more likely that illegible email addresses and spam filters are to blame for any partners' nonreceipt, rather than negligence on the part of OS.[10] In any case, Putative Participants failed to establish

---

[9] Putative Participants have not cited any authority for their claim that testimony/evidence on this point would "implicate [the] work product and attorney-client" privileges, and we have found none. Beyond a vague hypothetical presented at the evidentiary hearing, Putative Participants did not specify what testimony/evidence on this point might show or make any offer for in camera review of evidence.

[10] We note that OS is represented in this case by experienced counsel who often practice before the Tax Court. Considering their qualifications, we are not inclined to believe ill-supported accusations intimating that OS's counsel are part of a conspiracy to deprive other partners in Chimney Rock of (1) notice of a proposed settlement and/or (2) a fair settlement.

**[\*14]** facts regarding this point at the hearing and, like many other relevant issues, did not even address it in their post-hearing brief.

In short, Putative Participants could have participated in this case by complying with the procedures stated in Rule 245(b), but they did not do so. Putative Participants have not made a substantial showing regarding why they should now be permitted to participate pursuant to Rule 248. When a person owns a minority interest in an entity, there is often a chance that they will be forced to acquiesce to the will of the majority. Such is the case in this instance.

We have considered all arguments made, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*